### CROGHAN and others *v.* LIVINGSTON and others.

In an action for partition in the Supreme Court, as in equity, the omission of the guardian *ad litem* of an infant defendant to file his bond as required by statute, is a mere irregularity which is amendable and does not affect the jurisdiction of the court or the validity of a sale under its judgment.

*Ch.* 277 *of* 1852, authorizing the filing of a guardian's bond after judgment in cases of actual partition, is an enabling and not a restrictive one. It does not impair the power of a court having original equity jurisdiction to amend an irregularity by ordering such bond to be filed before or after a sale, as well as on actual partition.

Croghan *v.* Livingston.

APPEAL from an order of the Supreme Court, made in an action for partition, compelling the appellants, who had jointly purchased a part of the property at the sale, to complete their purchase. Matilda C. Livingston, one of the defendants in the action, being an infant more than fourteen years of age, Schuyler Livingston, her father, was, upon her petition, appointed her guardian *ad litem*, by an order entered October 2, 1856. He appeared and put in the common answer. A judgment was rendered May 5, 1857, directing the sale of the real estate described in the complaint. One parcel thereof, a farm in Columbia county, was sold July 1, 1857, to the appellants for the sum of $61,250, and by the terms of sale the purchase was to be consummated on the 24th day of July, 1857. The appellants on that day declined to complete their purchase. Their objection to the title was, that Schuyler Livingston had never filed any bond as guardian. On the 25th July, 1857, Mr. Livingston executed a bond, which was duly approved as to its form and the sufficiency of the sureties. The bond bore the date of the order appointing him, October 2, 1856. Upon the filing of an affidavit proving that the omission to execute the bond in due season was unintentional and resulted from the neglect of a clerk of the attorney, and upon the written consent of all the parties to the action, an order was made by the court at special term directing the bond to be filed *nunc pro tunc* as of October 2, 1856, and to have the same effect as if it had been filed on that day. The plaintiffs, upon proof of these facts, applied for an order requiring the purchasers to complete their purchase, and such order was made at special term. The purchasers appealed, and the order was affirmed by the court at general term in the first district, provisionally that it should appear upon examination, to be made by one of the justices of the court, that the guardian *ad litem* had faithfully discharged his duty in the progress of the action; that no injustice had been done to the infant, and that it was for the interest of the infant that the sale should

be confirmed. Such examination was had, upon notice to the purchasers, and the order having become absolute, the purchasers appealed to this court.

*Livingston Livingston*, for the appellants.

*Nicholas Hill*, for the respondents.

PRATT, J. The principal question in this case I deem to be, whether the mistake on the part of the guardian in not filing his bond according to the requirements of the statute, rendered the proceedings and judgment absolutely void; for if it was merely an irregularity which rendered the proceedings voidable only, the court had undoubtedly the power to allow an amendment of the proceedings by filing a bond *nunc pro tunc*. My examination will therefore be directed mainly to this point.

First. The Court of Chancery had original jurisdiction of an action for partition without the aid of the statute. (1 *Story's Eq. Jur.*, § 646.) The earliest instance of a bill for partition noticed in the books was in the reign of Elizabeth, and in the report of the case it is said that the court interfered from necessity, in respect of the minority of one of the parties, because he could not be made a party to a writ of partition. (*Toth. Trans.*, 155.)

The proceeding by suit in equity does not, therefore, depend upon the statute for jurisdiction, and in that respect is quite different from proceedings by petition, before the Code, in the common law courts. In an ordinary suit in equity, jurisdiction of the parties defendant is obtained by service and return of process upon infants as well as adults. In such cases the plaintiff is not bound in his bill to notice the fact that the defendants, some or all of them, were infants but he might frame his bill and issue his subpœna the same as if all were adults. After they were brought in upon process it was necessary, both at law and in equity, that guardians

Croghan *v.* Livingston.

should be appointed to appear for them, and it was erroneous for them to appear by attorney; but I apprehend that a case cannot be found holding that a judgment or decree when they appeared by attorney would be void. In a common law action the rule was in practice that an infant plaintiff should have a *prochein ami* and an infant defendant a guardian appointed before he was allowed to plead; yet a neglect in this respect did not render the proceedings void. The objection was not even a ground of non-suit at the trial, (2 *Saund.*, 212 *a*, *n.* 5; 7 *John. R.*, 373). It could only be taken advantage of by plea in abatement where an infant plaintiff pleaded without a guardian. And where judgment was against the infant it was error in fact for which the judgment would be revoked, But when the judgment was in favor of the infant it could not be reversed on account of his not having appeared by guardian. (5 *Barn. & Ald.*, 418; *Lil. En.*, 555; 2 *Ld. Raym.*, 1476). The want of the appointment of a guardian did not therefore deprive the court of jurisdiction even at common law.

In Equity the infant became the ward of the court upon the service of process upon him, and the guardian *ad litem* was but the agent of the court to attend to his interests during the litigation. (2 *Lead. Cas. in Eq.*, *part* 2, *p* 137, *note*; 3 *Gilman*, 435; *McPherson on Infants, Appendix.*) A failure therefore to provide this agent would not, it would seem, affect the jurisdiction of the court, but was a matter of error. (*Austin* v. *Trustees, &c.*, 8 *Metc.*, 196; *Smith* v. *Bradley*, 6 *Smede & Marsh.*, 485.) And if the failure to appoint a guardian at all did not render the proceedings void, for a much stronger reason the failure of the guardian when appointed, to comply with all the requirements of the statute, would not deprive the court of jurisdiction and render the proceedings void.

Secondly. Does the statute change this rule in regard to actions for partition? It will not be necessary to examine the question in regard to those special proceedings by peti-

tion in the, law courts, in force before the Code, for that I apprehend would scarcely aid the inquiry in regard to actions in equity or under the Code. Those were special proceedings, out of the regular course of the common law, and it is an elementary principle that in those special statutory proceedings, out of the regular course of actions at common law, by which parties might be divested of their estate, all the requirements of the statute must be strictly complied with.

Again, no process was served in those proceedings, but instead of it a simple notice to appear; and in case there were infant parties the first thing to be done was to procure the appointment of a guardian to appear for them. No jurisdiction was obtained at all of infant defendants, except by the appointment of a guardian *ad litem.* It is not necessary, therefore, to contend that an infant would be bound by a judgment in partition when no guardian had been appointed for him in such a case.

But when the partition is sought to be obtained by action, the practice, at least so far as getting the parties before the court, is the same as in other actions, by the service and return of process. Many of the provisions of the statute are not applicable at all to an action in chancery; those that were applicable were not designed to restrict the jurisdiction of the court, but simply to surround infant litigants with those safeguards which the legislature deemed necessary to protect their rights. It is true that the language is somewhat imperative, " that before any rule to plead or any other subsequent rule or order shall be made, the court shall be satisfied that such bond has been. executed and filed in the office of the clerk " (2 *R. S.*, 317, § 4), but it is no more imperative than the language of the statute " that before any process shall be issued in the name of an infant who is sole plaintiff in any suit, a competent and responsible person shall be appointed to appear as next friend in such suit " (2 *R. S.*, 446, § 2), and of section eight: " after the

Croghan *v.* Livingston.

issuing of process against any infant defendant, by which he shall have been arrested, the suit shall not be further prosecuted until a guardian *ad litem* shall be appointed," &c. Here the language is quite as imperative and absolute as it could well be framed, and yet the non-compliance with these requirements has never been held to render the proceedings void. Even in courts of limited jurisdiction, such as justices' courts, where the directions for the appointment of next friends and guardians for infant suitors are equally commanding, the proceedings were never held void but simply voidable. ( 18 *Wend.*, 513, 563; *Gra. Pr.*, 170.) It seems to me, therefore, the most that can be said in this case is that the proceedings were irregular merely, and not void.

Thirdly. Assuming, then, that the proceedings were not void, I can perceive no good reason why the court had not power to order them amended. Aside from the Code, the power of the old Court of Chancery was adequate to order such an amendment. Suppose the infant had not been made a party at all and the defect had been discovered immediately after the sale, I cannot see why the court might not have directed her to be brought in by supplemental complaint; and, after appointment of guardian, if it appeared best for the infant, the court, by consent of the guardian, might have made an order directing the judgment to stand good as against her, and allowing her to receive the benefits of the sale. But in the case at bar the infant was already in court, and had appeared by guardian; and the court upon directing the bond to be filed *nunc pro tunc,* must be presumed to have examined the pleadings and ascertained whether the guardian had neglected his duty in any respect. Upon finding that he had not neglected his duty, and that the interest of the infant could not suffer thereby, instead of going through the whole proceedings again, the court allowed them to stand as it, in my opinion, had clearly the right to do under the old equity practice.

But, by the Code, if there was any defect in the power before, its power is ample under that instrument. By section one hundred and seventy-three the court is authorized, " either before or after judgment, in furtherance of justice, and upon such terms as may be proper, to amend any pleading, process or proceeding by adding or striking out the name of a party or by correcting a mistake in any other respect." These provisions are very broad and comprehensive, and would seem to apply as well to actions in partition as to actions for any other relief. No one, I think, would doubt this, were it not for an act of the legislature in 1852, which it is claimed is a legislative interpretation of the Code, showing that the one hundred and seventy-third section was not designed to apply to actions for partition. This act assumes to confer power upon the court to allow bonds of guardians to be filed *nunc pro tunc*, before judgment or decree in all cases, and after judgment or decree in cases of actual partition.

In the first place, as to the effect of this act, it will not be contended that if the court had the power, before, to allow a bond to be filed *nunc pro tunc* after judgment and sale, that such power is taken away by the act. It can only be used, therefore, as a legislative expression of opinion in regard to the state of the law, and the power given by the one hundred and seventy-third section of the Code, to the courts in actions for partition. As an opinion of the law-making power it might be entitled to some weight, were it not manifest from the act itself that it must have been passed with little examination, and with a very limited understanding of the progress which the Code had made subsequent to its first enactment in 1848. As the Code stood in 1852, and still stands, the statutory proceedings by petition had been entirely repealed, and there was no method in force for procuring a compulsory partition except by action, and yet the act of 1852 assumes that those proceedings are yet in force.

Croghan *v.* Livingston.

That these proceedings by petition are repealed is manifest from a slight examination of the Code as it was originally enacted, and as it has since been amended. By section three hundred and ninety of the original Code, it was not to affect any proceedings provided for by the second, third, fourth, fifth, sixth and eighth titles of chapter five, third part of the Revised Statutes. In the amended Code of 1849, the reservation of proceedings provided for by the second, third, fourth, fifth and sixth titles was omitted, and several new chapters were added to the Code. By reference to the Revised Statutes it will be found that title two provided for the determination of claims to real property, that title four was in relation to the writ of nuisance, and that title five was in relation to waste. They were all omitted from the reservation of existing proceedings in the Code of 1849, and in lieu chapter four was inserted in the Code, entitled " Of actions to determine conflicting claims to real property and for waste and nuisance." The same remedies provided in those titles were thereafter to be obtained by action under the Code. So title three, reserved in the Code of 1848, being the title regulating proceedings in partition, was omitted from the Code of 1849, and in its place chapter three of the Code was adopted. This chapter is entitled " Actions for the partition of real property." It provides that the provisions of the Revised Statutes relating to the partition of lands " shall be applicable to actions for such partition brought under the Code, so far as the same can be so applied to the substance and subject matter of the action without regard to its form." It is therefore manifest that this provision was designed as a substitute for the proceedings by partition. There is no longer any necessity for any such proceedings. The remedy by action is much more simple. Under the old practice a suit in chancery was very expensive and protracted, and hence the necessity of those special proceedings. But now an action under the Code would afford a remedy quite as speedy and much less expen-

sive; and it was one of the primary objects with the codifiers to simplify the practice and to provide as far as possible one form of action for all the different kinds of remedies. These considerations, in addition to the fact that by the Code of 1849, a substitute for those proceedings was adopted, and the reservations of the Code of 1848 were no longer retained, leave no doubt I think that the remedy by petition was designed to be abolished.

Again, the framers of the act of 1852 did not seem to notice that by the Code a guardian is now appointed for an infant plaintiff as well as for an infant defendant; that the terms next friend, or *prochein ami* as applied to infant litigants are now obsolete. Nor did they notice that there is no longer such a thing as a decree, as applied to the final determination of the cause; that such determination is now a judgment whether the relief granted be equitable or legal. In fine this act was manifestly got up to enable some blundering practitioner to extricate himself from some fancied or real difficulty into which he had fallen or supposed he had fallen. I am not therefore disposed to treat it as very controlling authority upon the question under consideration, but rather to examine and determine the question as we should have felt authorized to determine it previous to the passage of the act.

The act of 1857, applying the one hundred and seventy-third section of the Code to proceedings for partition under the Revised Statutes, has also been referred to as bearing upon the question. As those proceedings had been abolished some eight years when this act was passed, it is not easy to ascertain the object which the legislature had in view in passing it. If they assumed that those proceedings were still in force, then the object must have been to give the courts the same power to amend in proceedings by petition as they already possessed in proceedings by action. And as the purpose of the act, as appears by its title, was "to protect purchasers upon sales in partition of lands," it must

have been to enable the courts to amend proceedings after judgment and sale rather than before. So far, therefore, as this act is concerned, it constitutes a legislative expression in favor of the position that the court had power to grant the amendment in question. For it is scarcely to be assumed that the legislature designed to give a larger power to the court to grant amendments in special proceedings than they possessed in actions.

It was suggested upon the argument that there is a distinction between cases where a sale is had and where actual partition is made. It strikes me that if there be any difference the power of amendment should be less than in the case of a partition. It is clearly much more important that a judgment should be final in the former case than in the latter; and such has been the rule in analogous cases in the English Court of Chancery. There, in the case of a strict foreclosure, the infant, after his majority, is allowed, under certain circumstances, to come in and have the decree opened. But in the case of a sale no such privilege is accorded to him, but his right is cut off by the decree and sale and he is concluded.

Upon the whole, I am satisfied that the order made at general term should be affirmed.

ROOSEVELT, J., expressed no opinion.

Judgment affirmed.