## CROGHAN *a.* LIVINGSTON.

*Court of Appeals ; April Term,* 1858.

PARTITION.—AMENDMENT.—FILING OF GUARDIAN'S BOND *nunc pro tunc.*

The failure of a guardian *ad litem* for infant defendants, in a partition action, to file his bond according to the requirements of the statute, does not render the proceedings and judgment absolutely void. It is merely an irregularity, of which the court have the power to allow amendment by filing a bond *nunc pro tunc.*

Of the jurisdiction of the court in actions to which infants are parties.

*It seems,* that proceedings for partition under 2 Revised Statutes, 313, are abolished by the Code, being superseded by action.

The provisions of section 173 of the Code—relating to amendments—are applicable to partition actions, and the power of the court to amend in such actions is not restricted by the act of 1852 (*Laws of* 1852, 411).

The object and effect of the act of 1852 (*Laws of* 1852, 411), and the act of 1857 (*Laws of* 1857, *ch.* 679), considered.

*It seems,* that if any distinction is to be made in the power of amendment between cases where a sale is had, and where actual partition is made, the power should be more freely exercised in the former than in the latter class of cases.

Appeal from an order of the Supreme Court in the first district, compelling certain purchasers at a judicial sale to complete their purchase.

The action was for partition. Judgment, ordering the property to be sold under the direction of a referee appointed in the cause, was obtained on the 5th of May, 1857. The property consisted of three parcels. One was purchased at the sale by the appellants for $61,250.

The time fixed for completing the purchase was July 24, 1857, and the only ground on which the appellant refused to comply was, that the guardian *ad litem* of Matilda C. Livingston, an infant defendant in the partition suit, omitted to file his bond as such within the precise period designated in the statute. He was the father and general guardian of the infant, and was appointed on her special application, by an order made in October, 1856, she being over fourteen years of age.

The mistake was discovered July 25, 1857, and a bond in proper form was executed; which, after being approved by the

court, was filed *nunc pro tunc* as of the time when the guardian was appointed; the court having allowed this to be done by an order made, pursuant to the consent of all the parties to the suit, on the 25th of July. The appellants still refused to complete their purchase, and an application was then made to compel them to complete it. The special term granted the application, and its order was affirmed by the general term, and appeal taken to the Court of Appeals.

*Livingston Livingston* and *Charles O' Conor*, for the appellants.

*Cambridge Livingston* and *Nicholas Hill, jr.*, for respondents.

*A. F. Smith*, for defendant Schuyler Livingston, guardian for the infant defendant.

BY THE COURT.—PRATT, J.—The principal question in this case I deem to be, whether the mistake on the part of the guardian, in not filing his bond according to the requirements of the statute, rendered the proceedings and judgment absolutely void. For if it was merely an irregularity which rendered the proceedings voidable only, the court had undoubtedly the power to allow an amendment of the proceedings by filing a bond *nunc pro tunc.* My examination will be directed mainly to this point.

*First.* The Court of Chancery had original jurisdiction of an action for partition without the aid of the statute. (1 *Story's Eq. J.*, 46.) The earliest instance of a bill for partition, noticed in the books, was in the reign of Elizabeth; and in the report of the case it was said that the court interfered from necessity in respect of the minority of one of the parties, because he could not be made a party to a writ of partition. (*Tothill's Trans.*, 155.) The proceeding by suit in equity does not therefore depend upon the statute for jurisdiction, and in that respect is quite different from proceedings by partition before the Code in the common-law courts. In an ordinary suit in equity, jurisdiction of the parties defendants is obtained by service and return of process, upon infants as well as adults. In such cases the plaintiff was not bound in his bill to notice the fact that the defendants, some or all of them, were infants, but he might frame his bill and issue his subpœna the same as if all were

adults. After they were brought in upon process, it was necessary, both at law and in equity, that guardians should be appointed to appear for them, and it was erroneous for them to appear by attorney; but I apprehend that a case cannot be found holding that a judgment or decree where they appeared by attorney would be void.

In a common-law action, the rule was in practice that an infant plaintiff should have a *prochain ami*, and an infant defendant, a guardian appointed before he was allowed to plead; yet a neglect in this respect did not render the proceedings void. The objection was not even a ground of nonsuit at the trial. (2 *Saund.*, 212, note 5; Schermerhorn *a.* Jenkins, 7 *Johns.*, 373.) It could only be taken advantage of by plea in abatement, when an infant plaintiff pleaded without a guardian; and where judgment was against the infant, it was error in fact, for which the judgment would be revoked. But when the judgment was in favor of the infant, it would not be reversed, on account of his not having appeared by guardian. (5 *Barnw. & A.*, 418; *Lill. Ent.*, 555; 2 *Ld. Raym.*, 1976.) The want of the appointment of a guardian did not, therefore, deprive the court of jurisdiction even at common law.

In equity the infant became the ward of the court, upon the service of process upon him; and the guardian *ad litem* was but the agent of the court to attend to his interests during the litigation. (2 *Lead. Cas. in Eq.*, pt. 2, 137; 3 *Gilm.*, 435; *MacPherson on Inf.*, *Appendix.*) A failure, therefore, to provide this agent would not, it would seem, affect the jurisdiction of the court, but was a matter of error merely. (8 *Allet.*, 196; 6 *Smed. & M.*, 485.) And if the failure to appoint a guardian at all did not render the proceedings void, for a much stronger reason, the failure of the guardian, when appointed, to comply with all the requirements of the statute would not deprive the court of jurisdiction, and render the proceedings void.

*Secondly.* Does the statute change this rule in regard to actions for partition? It will not be necessary to examine the question in regard to those special proceedings by petition in the law courts in force before the Code, for that, I apprehend, would scarcely aid the inquiry in regard to actions in equity, or under the Code. Those were special proceedings out of the regular course of the common law; and it is an elementary

principle, that in the special statutory proceedings out of the regular course of actions at common law, by which parties might be divested of their estate, all the requirements of the statute must be strictly complied with.

Again, no process was served in those proceedings, but instead of it a simple notice to appear. And in case there were infant parties, the first thing to be done was to procure the appointment of a guardian to appear for them. No jurisdiction was obtained at all of infant defendants, except by the appointment of a guardian *ad litem.* It is not necessary, therefore, to contend that an infant would be bound by a judgment in partition, when no guardian had been appointed for him in such a case.

But when the partition is sought to be obtained by action, the practice, at least so far as getting the parties before the court, is the same as in other actions, by the service and return of process.

Many of the provisions of the statute are not applicable at all to an action in chancery : those that were applicable were not designed to restrict the jurisdiction of the court, but simply to surround infant litigants with those safeguards which the Legislature deemed necessary to protect their rights. It is true that the language is somewhat imperative, " that before any rule to plead, or any other subsequent rule or order shall be made, the court shall be satisfied that such bond has been executed and filed in the office of the clerk" (2 *Rev. Stats.,* 317, § 4); but it is no more imperative than the language of the statute, " that before any process shall be issued in the name of an infant, who is sole plaintiff in any suit, a competent and reasonable person shall be appointed to appear as next friend in such suit" (2 *Rev. Stats.,* 446, § 2); and by section 8, " after the issuing of process against any infant defendant, by which he shall have been arrested, the suit shall not be further prosecuted until a guardian *ad litem* shall be appointed," &c. Here the language is quite as imperative and absolute as it could well be framed; and yet the non-compliance with these requirements has never been held to render the proceedings void. Even in courts of limited jurisdiction, such as justices' courts, where the directions for the appointment of next friend, and guardians for infant suitors, are equally commanding, the proceedings were never held void, but simply voidable. (18 *Wend.,* 565 ; *Ib.,* 513 ;

*Gra. Pr.*, 190.) It seems to me, therefore, the most that can be said in this case is, that the proceedings were irregular merely, and not void.

*Thirdly.* Assuming, then, that the proceedings were not void, I can perceive no good reason why the court had not power to order them amended. Apart from the Code, the power of the old Court of Chancery was adequate to order such an amendment. Suppose the infant had not been made a party at all, and the defect had been discovered immediately after sale; I cannot see why the court might not have directed her to be brought in by supplemental complaint; and after appointment of the guardian, if it appeared best for the infant, the court, by consent of the guardian, might have made an order directing the judgment to stand good as against her, and allowing her to receive the benefit of the suit. But in the case at bar, the infant was already in court, and had appeared by guardian; and the court, upon directing the bond to be filed *nunc pro tunc*, must be presumed to have examined the proceedings, and ascertained whether the guardian had neglected his duty in any respect. Upon finding that he had not neglected his duty, and that the interests of the infant would not suffer thereby, instead of going through the whole proceedings again, the court allowed them to stand, as it, in my opinion, had clearly the power to do under the old equity practice.

But by the Code, if there was any defect in the power before the Code, the power is ample under that instrument. By section 173, "the court is authorized, either before or after judgment, in furtherance of justice, and upon such terms as may be proper, to amend any pleading, process, or proceeding, by adding or striking out the name of a party, or by correcting a mistake in any other respect." These provisions are very broad and comprehensive, and would seem to apply as well to actions in partition as to actions for any other relief. No one, I think, would doubt this, were it not for an act of the Legislature in 1852, which, it is claimed, is a legislative interpretation of the Code, showing that section 173 was not designed to apply to actions for partition. This act assumes to confer power upon the court to allow bonds of guardians to be filed *nunc pro tunc* before judgment or decree in all cases, and after judgment or decree in cases of actual partition.

In the first place, as to the effect of this act, it will not be contended that if the court had the power before to allow a bond to be filed *nunc pro tunc* after judgment and sale, that such power is taken away by the act. It can only be used, therefore, as a legislative expression of opinion in regard to the state of the law, and the power given by section 173 of the Code to the courts in actions for partition. As an opinion of the law-making power, it might be entitled to some weight, were it not manifest from the act itself that it must have been passed with little examination, and with a very limited understanding of the progress which the Code had made subsequent to its first enactment in 1848. As the Code stood in 1852, and still stands, the statutory proceedings by petition had been entirely repealed, and there was no method in form for procuring a compulsory partition, except by action, and yet the act of 1852 assumes that these proceedings are yet in force.

That those proceedings by petition are repealed, is manifest from a slight examination as it was originally enacted, and as it has since been amended. By section 390 of the original Code, it was not to affect any proceedings provided for by titles 2, 3, 4, 5, 6, and 8 of chapter 5, part 3, of the Revised Statutes. In the amended Code of 1849, the reservation of proceedings provided for by titles 2, 3, 4, 5, and 6, was omitted, and several new chapters were added to the Code. By reference to the Revised Statutes, it will be found that title 2 provided for the determination of claims to real property, that title 4 was in relation to the writ of nuisances, that title 5 was in relation to waste. These were all omitted from the reservations of existing proceedings in the Code of 1849; and in lieu, chapter 4 was inserted in the Code, entitled " Of actions to determine conflicting claims to real property, and for waste and nuisance." The same remedies provided in those titles were thereafter to be determined by action under the Code. So title 3, reserved in the Code of 1848, being the title regulating proceedings in partition, was omitted from the Code of 1849, and in its place chapter 3 of the Code was adopted. This chapter is entitled " Actions for the partition of real property." It provides that the provisions of the Revised Statutes relating to the partition of lands " shall be applicable to actions for such partitions brought under the Code," so far as the same can be so applied, " to the substance

and subject-matter of the action, without regard to its form." It is therefore manifest that this provision was designed as a substitute for the proceedings by petition. There is no longer any necessity for any such proceedings. The remedy by action is much more simple. Under the old practice a suit in chancery was very expensive and protracted; and hence the necessity of these special proceedings. But now, an action under the Code would afford remedy quite as speedy and much less expensive. And it was one of the primary objects with the codifiers to simplify the practice, and to provide as far as possible one form of action for all the different kinds of remedies. These considerations, in addition to the fact that by the Code of 1849 a substitute for those proceedings was adopted, and the reservations of the Code of 1848 were no longer retained, leave no doubt, I think, that the remedy by petition was designed to be abolished.

Again, the framers of the act of 1852 did not seem to notice that by the Code a guardian is now appointed for an infant plaintiff as well as for an infant defendant; that the term next friend, or *prochein ami*, as applied to infant litigants, is now obsolete. Nor did they notice that there is no longer such a thing as a decree applied to the final determination of the cause, —that such determination is now a judgment, whether the relief granted be equitable or legal. In fine, this act was manifestly got up to enable some blundering practitioner to extricate himself from some fancied or real difficulty into which he had fallen. I am not therefore disposed to treat it as very controlling authority upon the question under consideration, but rather to examine and determine the question as we should have felt constrained to determine it previous to the passage of the act.

The act of 1857, applying section 173 of the Code to proceedings for partition under the Revised Statutes, has also been referred to as bearing upon the question. As those proceedings had been abolished some eight years when this act was passed, it is not easy to ascertain the object which the Legislature had in view in passing it. If they assumed that those proceedings were still in force, then the object must have been to give the courts the same power to amend in proceedings by petition as they already possessed in proceedings by action. And as the purpose of the act, as appears by its title, was " to protect

purchasers upon sales in partition of lands," it must have been to enable the courts to amend proceedings after judgment and sale, rather than before. So far, therefore, as this act is concerned, it constitutes a legislative expression in favor of the position that the court had power to grant the amendment in question. For it is scarcely to be assumed that the Legislature designed to give a larger power to the court to grant amendments in special proceedings than they possessed in actions.

It was suggested upon the argument that there is a distinction between cases where a sale is had, and where actual partition is made. It strikes me that if there is any difference, the power of amendment should be larger in the case of a sale than in the case of a partition. It is clearly much more important that a judgment should be final in the former case than in the latter. And such has been the rule in analogous cases in the English Court of Chancery. There, in the case of a strict foreclosure, the infant after his majority is allowed, under certain circumstances, to come in and have the decree opened. But in the case of a sale no such privilege is awarded to him; but his right is cut off by the decree and sale, and he is concluded.

Upon the whole, I am satisfied that the order made at general term should be affirmed.