## John G. McMurray *vs.* Caroline A. McMurray and others.

If a complaint be amended, a copy must be served on the defendant, and the right to answer is a substantial right. Hence the neglect to serve an amended complaint on infant defendants, in a foreclosure suit, is, at least, a great irregularity. But if too much time has elapsed, and too many inno-cent parties are interested, the judgment will not be disturbed on that ground.

An infant defendant cannot, while an infant, waive the defect that he did not appear by guardian.

It is not a mere irregularity to take a judgment against an infant defendant, without the appointment of a guardian *ad litem* for him. It is error in fact.

But as the writ of error has been abolished, there seems to be no other mode of obtaining relief against such a judgment than by motion to set it aside.

And if a judgment of foreclosure is obtained against infant defendants with-out any appointment of a guardian *ad litem* for them, the judgment is erro-neous, and will be set aside, as a matter of right, if the motion is made in proper time.

But as the omission to procure such appointment is not a mere irregularity, the infants are not bound to move at the earliest possible opportunity.

Where, however, infant defendants, instead of moving to set aside a judgment of foreclosure recovered against them, as soon as they severally came of age, delayed, respectively about nine, seven and four years; it was *held* that innocent parties, who had in the meantime become interested in the mort-gaged premises, ought not to suffer by the delay. A motion to set aside the judgment was therefore denied, but without prejudice to their right to bring an action of ejectment, or an action to redeem, in order to test their claim to set aside the judgment as being absolutely *void*.

THIS was a motion by the defendants to set aside a judg-ment in an action for the foreclosure of a mortgage, and all proceedings subsequent to the service of the summons. The facts are stated in the opinion.

*Banker & Rising,* and *Beach & Smith,* for the motion.

*Mr. Hyatt* and others, opposed.

LEARNED, J. The papers on this motion are volumin-ous; but the facts on which the decision must turn are few and simple. About December 1, 1860, the plaintiff

commenced the action above entitled, for the purpose of foreclosing a mortgage given by Robert D. McMurray, then deceased, on land in Troy. The land was 180 feet wide, front and rear. At the time of the commencement of the action, Charles D. McMurray, Frances E. McMurray and Mary A. McMurray were seised in fee, in remainder, each, of an undivided fourth of three undivided fifth parts of the equity of redemption in a part of the mortgaged premises, being 128 feet front and rear, in which Mrs. Caroline A. McMurray had a life estate for her own life. Frances E. was born July 5, 1840; Charles D. was born October 31, 1842; and Mary A. was born March 14, 1845, and at the time of the commencement of this action they were, therefore, all infants. The summons and complaint were served as follows: on Frances E., July 27, 1860, and on Charles D., July 27, 1860. Mary A. not being then a party to the action. Subsequently, in December 1860, the summons and complaint were amended by adding Mary A. and others as parties, and by inserting in the complaint new allegations as to the contents of the will of the mortgagor; and the amended summons with notice of the object of the suit was served on Mary A., January 31, 1861. No service of the amended summons or complaint was made on Frances E., or Charles D. No guardian *ad litem* was ever appointed for any of these infants, and they did not appear or answer in the action, by guardian or otherwise.

On the 30th day of March, 1861, an order of reference to compute the amount was granted, which did not require the taking of proof of facts or the examination of the plaintiff as to the payments, and thereupon, on the same day, the usual judgment of foreclosure and sale was taken and the roll filed. The property was sold under the same, about April 22, 1861; Frances E., Charles D., and Mary A., being still infants. The referee's report of the sale cannot be found. By his deed it appears that the

mortgaged property was purchased by the plaintiff, on the sale, for $14,000. The judgment was for $10,966.37 due on the mortgage, with $301.51 for taxes, and $167.15 costs; all of which, with interest and the expenses, amounted, on the day of sale, to $11,475.38.

Subsequently the plaintiff, having thus obtained the title, sold the premises, and by successive conveyances they have come to be held in severalty by a number of persons, not parties to the action, but served with notice of this motion. The mortgaged premises are now divided into eight city lots. The 128 feet in which Frances E., Charles D., and Mary A. had an interest, take up five of these lots and a part of another. All of these eight lots have been built upon, at an expense, in the aggregate, of over $30,000. This building was commenced in the spring of 1863, and continued about a year. And partly from these improvements, and partly from the prosperity of the city, the lots have greatly increased in value since the sale under the foreclosure. It is not claimed that the present owners of these lots had any actual knowledge of the alleged defect in their title, and on the other hand, it is averred that the moving parties, Charles D., Frances E., and Mary A. must have seen and known of the improvements as they were put upon these lots.

Caroline A. McMurray died March 10, 1869, and the moving parties, up to that time, were under the belief that they could not assert any rights which they had in the property until after her death. One other fact may be mentioned, whch is not, perhaps, very material. Before the foreclosure suit was commenced, the plaintiff, John G. McMurray, bought from the executrix of the mortgagor, (she having a power to sell,) the 52 feet, part of the mortgaged premises, in which the moving parties have no interest. He did not put the deed on record until 1870, and has proceeded in the foreclosure without regard

to this purchase. The whole of the mortgaged property was sold by the referee and purchased by the plaintiff.

There is some conflict of testimony whether the lots did or did not sell for their full value; and some question whether, as would seem from the deed, they were sold in one parcel or in several. But these are matters which cannot come up on this motion. Yet I may say, in passing, that from this unrecorded purchase of the 52 feet; from the want of the proper order of reference to take proof of the facts and to examine the plaintiff as to the payments; from the selling of the property in one parcel; from the payment of the surplus of $2524.62 to the executrix of the mortgagor and not to the devisees, (some of whom are these moving parties;) from the repayment of that surplus by the executrix to the plaintiff, I am led to think that the interests of these moving parties actually suffered by the want of a guardian *ad litem.*

The questions to be settled here are:

1st. Is the want of a guardian *ad litem* a mere irregularity, or does it render the judgment erroneous or void?

2d. Is the remedy asked on this motion the proper relief?

3d. Is the motion made in time?

There is a defect in the judgment, not referred to in the motion, but apparent on examination of the roll. The amended summons and complaint were not served on Frances E. or Charles D. Now it is said in the case of *The People* v. *Woods,* (2 *Sandf.* 653,) that a judgment thus obtained is irregular, and must be set aside. It by no means follows, says Judge Sandford, because the defendant did not defend the original complaint, that he was not desirous to answer the complaint amended. The Code provides, (§ 146,) that if the complaint be amended, a copy must be served on the defendant, and the right to answer is a substantial right. (*Low* v. *Graydon,* 14 *Abb.* 444.) The neglect to serve on these two defendants was, at the least, a great irregularity. But too much time has elapsed,

McMurray *v.* McMurray.

and too many innocent parties are interested, for the judgment to be disturbed on that ground.

I proceed to examine the question as to the want of a guardian *ad litem*. And here it should be observed that the position of an infant defendant is different from that of an infant plaintiff. There are several cases in which an adult defendant has sought to set aside proceedings on account of neglect in the infant plaintiff to procure the appointment of a guardian *ad litem*. Such are the cases of *Rutter* v. *Puckhofer*, (9 *Bosw.* 638;) *Fellows* v. *Niver*, (18 *Wend.* 563;) *Parks* v. *Parks*, (19 *Abb.* 161,) cited by the counsel opposing this motion. But these cases do not touch the point involved here. They are cases in which the defendant, by pleading to the merits, had waived the defect in the plaintiff's proceedings. This is pointed out in *Fairweather* v. *Satterly*, (7 *Rob.* 546.) The infant plaintiff comes voluntarily into court. If he comes irregularly the defendant should object promptly; by pleading in bar under the old practice, or answering generally, under the present, the defendant omits to object, and waives the defect. But an infant defendant is differently situated. He is brought into court without his consent, and the plaintiff claims some relief against him. He must defend his rights, or by his silence admit the plaintiff's claim. He cannot appoint an attorney to appear for him. Indeed, he may be an infant, in the ordinary meaning of the word, and incapable of acting. Therefore it is that the law has provided him a protector, and therefore the plaintiff, if he would have relief against the infant, must see, at his peril, that this protector is appointed. The Code (§ 115) says that when an infant is a party he must appear by guardian. This is no new provision; and the old authorities will therefore shed light on the effect of disregarding it. In *Mockey* v. *Grey*, (2 *John.* 192,) it was held to be error for an infant to appear by attorney; and the same doctrine is held in *Alderman* v. *Tirrell*, (8 *id.* 418.) In *Bliss* v. *Rice*,

McMurray *v.* McMurray.

(9 *id.* 160,) it was held to be error for an infant to appear in person and not by guardian. In *Hillyer* v. *Larzelere,* (9 *id.* 160,) a judgment by default against an infant in an action of dower, was set aside because no guardian *ad litem* had been appointed. In *De Witt* v. *Post,* (11 *id.* 460,) a verdict had been rendered against an infant defendant who had appeared by attorney. On writ of error the judgment was recalled for this error in fact. For an infant to appear by attorney, and not by guardian, was held to be error in fact, in *Arnold* v. *Sandford,* (14 *id.* 417;) and in *Camp* v. *Bennett,* (16 *Wend.* 48.) In *Comstock* v. *Carr,* (6 *id.* 526,) an infant defendant appeared by attorney and obtained judgment of *non pros.* The judgment was set aside. To the same general effect is *Gosling* v. *Acker,* (2 *Hill,* 391.)

It will thus be seen that by a uniform series of decisions under the former practice, judgments against infants were set aside, reversed or recalled for error in fact, on the ground that no guardian *ad litem* had been appointed. The remedy in the Supreme Court was by writ of error in fact. That has been abolished by the Code; but we shall find the same general principles enforced in other ways. The first case is that of *Kellogg* v. *Klock,* (2 *Code R.* 28,) where a judgment against an infant was set aside for the want of a guardian *ad litem;* the infant's counsel arguing that, as the writ of error was abolished, and as an appeal did not lie from a judgment by default, a motion to set aside the judgment was proper. With which opinion the court seem to have concurred. In the case of *Boylen* v. *McAvoy,* (29 *How.* 278,) the plaintiff had a verdict against the defendant, who had appeared by attorney, but who, at the time of the trial, was four months under twenty-one years old. Judge JOHNSON says of the appearance of an infant by attorney, that "it was an error of fact for which a judgment would be reversed or set aside. It was never curable by the statute of jeofails, and cannot be obviated in this

way, (referring to the motion then made by the plaintiff,) against the defendant's objection, although he is now of age. He may, if he chooses, waive the irregularity, but the court cannot compel him to abide by his answer and the trial under it, if he elects not to be bound. The statute and the rules of practice which require an infant to appear by guardian *ad litem* had a substantial object in view, the protection of such persons against what the law adjudges to be their own incompetency to choose attorneys or to conduct their own litigation with suitable prudence and discretion." Our own statute of jeofails does not include this defect. By 2 *R. S. marg. p.* 424, (§ 7, *subd.* 7,) judgments in favor of an infant were not to be reversed because he appeared by attorney. We may infer from the silence as to judgments against him, that they were not thus protected. The case of *Harvey* v. *Large,* (51 *Barb.* 222,) holds that a judgment in a justice's court against an infant, where no guardian *ad litem* is appointed, would be void. In *Fairweather* v. *Satterly,* (7 *Rob.* 546,) a verdict had been rendered, and judgment entered against an infant defendant who had appeared by attorney and answered. Judge Jones reviews the cases, and says: " I am confirmed in the view which I took at the argument, that an infant cannot waive the objection that his rights have not been protected in the manner prescribed by law;" and the judgment was set aside.

It was strongly urged in opposition to this present motion, that this defect was a mere irregularity. The question as to what defects are mere irregularities was discussed in *Clapp* v. *Graves,* (26 *N. Y.* 418,) in which the court quote with approval the language of Justice Coleridge, in *Holmes* v. *Russell,* (9 *Dowl.* 487:) " It is difficult, sometimes, to distinguish between an irregularity and a nullity; but I think the safest rule to determine what is an irregularity, and what is a nullity, is to see whether the party can waive the objection; if he can waive it, it amounts to an irregularity;

if he cannot it is a nullity." If this test be applied to the present case we are to ask, could these defendants have waived this defect? I suppose they could not. So long as they were infants, (and they were infants until after the judgment,) they could waive nothing. It is even the well known doctrine that the guardian *ad litem* cannot, by his answer, admit the allegations of the complaint. The cases of *Fairweather* v. *Satterly*, and of *Boylen* v. *McAvoy*, both recognize this principle fully, and *an* infant defendant, while an infant, cannot waive the defect that he did not appear by guardian. There is one case which needs some examination—that of *Croghan* v. *Livingston*, (17 *N. Y.* 218.) The decision in that case was that the omission by the guardian *ad litem* to file his bond was a mere irregularity, and that the bond might be filed *nunc pro tunc*. This is all that the case decides. In the course of the opinion, Judge PRATT says: "I apprehend that a case cannot be found holding that a judgment or decree, when they appeared by attorney, would be void;" and further, "a failure, therefore, to provide this agent, (a guardian *ad litem*,) would not, it would seem, affect the jurisdiction of the court, but was matter of error," citing *Austin* v. *Charlestown Female Seminary*, (8 *Metc.* 198.) In this last mentioned case it was held, that the omission to appoint a guardian *ad litem* of an infant defendant, in a partition suit, did not make the judgment void, but voidable by writ of error; that it could be avoided only by the infant or privies in blood, not by privies in estate; and that a party to an erroneous judgment, who is not entitled to a writ of error, may avoid it by motion, or by plea in a court of competent jurisdiction. The case of *Rogers* v. *McLean*, (31 *How.* 279,) is substantially to the same effect with *Croghan* v. *Livingston*, affirming the right of the court to amend the proceedings in which a guardian *ad litem* had been appointed.

From this review of the cases there can be no doubt that it is not a mere irregularity to take a judgment against

McMurray *v.* McMurray.

an infant defendant, without the appointment of a guardian *ad litem* for him. It is, in the accurate language of the old practice, error in fact. The infant, in some cases, could have the judgment reversed; and in the case of a judgment in this court, it would be "recalled" by writ in the nature of a writ *coram nobis*, to be issued, not of course, but on application to the court. (*See Ferris* v. *Douglass*, 20 *Wend.* 626.) And nothing that the infant could do, during infancy, waived his right to this relief. As has been before remarked, the writ of error is abolished. There seems to be no other mode of obtaining this relief than by motion to set aside the judgment. It is to be regretted that the old practice (or something similar) is not in force in this particular. For this relief is a matter of strict law, and should properly be sought by strict forms and proceedings; while the papers, on a motion like the present, inevitably bring up equitable considerations. The proceeding, in such a case, is not one which should be addressed to the varying discretion of the court. Such considerations as those of the increased value of the property, the knowledge of the moving parties that innocent persons were building, and the like, ought not to affect a question which should be one of strict law. And if such matters were to be considered, it would be necessary to remember that although the occupants of these lands bought them innocently, still they are chargeable with notice of their own title. They were bound to know that these moving parties had a fee in remainder, and they were bound to see that such remainder had been barred. Indeed a hasty examination of the judgment roll would have shown the fact of infancy and the want of a guardian. But I think that this motion must be decided on the same principles as would have applied to the decision of the old writ of error, and not on the so-called equitable doctrines which prevail in motions addressed to the discretion of the court. And I am fully satisfied that if this motion

is made within proper time, the judgment ought to be set aside as a matter of right.

It remains then to consider whether the moving parties have made their motion within the proper time. I have already said that the defect complained of is not an irregularity; so that the provision of the Revised Statutes limiting the time to one year does not apply. (2 *R. S., marg. p.* 359, § 3.) Nor does section 174 of the Code touch this case. And for the reason that this is not a mere irregularity, the parties are not bound to move at the earliest possible opportunity. Still there should be some limitation. The moving parties severally came of age July 5th, 1861, October 31st, 1863, and March 14th, 1866. They seem to have thought that they could not proceed to enforce their rights until the death of Caroline A. McMurray, on the 10th of March, 1869. But this was a mistake. They could severally have moved as soon as they came of age, and they have, therefore, delayed respectively about nine, seven and four years. Innocent parties ought not to suffer from this mistake. I regret that there is not, as there should be, some statutory limitation to the right to make such a motion. It would be intolerable that it should be allowed at any unlimited time after the judgment, even on showing the fullest excuse for delay. For in the course of time rights of new parties arise which ought not to be disturbed. And it is very objectionable that the time within which such a motion may be made should depend on judicial discretion. The feelings of judges vary. This variance may be endured in matters addressed to discretion; but it is very bad in matters of strict right. In the present case, I do not think that the ignorance of their rights, stated by these moving parties, is such a complete excuse for delay, that they may make their motion whenever they learn what their rights are. They are bound to know their legal rights; according to the old maxim that ignorance of the law excuses no one.

McMurray *v.* McMurray.

Under the old practice, a writ of error (including the writ in the nature of a writ *coram nobis*) must have been brought within two years. If the party against whom the judgment was recovered were an infant, he might bring the writ within two years after coming of age. That time was liberal, and although I am not aware that, by any existing provisions, that limitation is legally applicable to this motion, still I do not think I shall be much astray if I follow the wisdom of former legislation. If these moving parties had sought their relief before the Code, they would have been strictly limited to the two years after they severally came of age. This limitation would have been entirely irrespective on the one hand of their knowledge or ignorance, and on the other of the acts of parties claiming under the judgment, (although by this remark I do not say how the reversal of a judgment would affect a sale under it. *Holden* v. *Sackett*, 12 *Abb.* 473.)

I shall hold, therefore, both by analogy to the old writ of error, and also as my conclusion on the circumstances of this case, that the moving parties have not made their motion within such time as entitles them to the relief asked; and I shall deny the motion. They claim that the judgment is void. If they are correct in this they may perhaps enforce their rights by ejectment, or by an action to redeem. The denial of this motion, therefore, will be without prejudice to any action of ejectment, or to redeem the mortgage, or of any other action which these parties might otherwise lawfully bring. Ten dollars, costs of opposing the motion, to be allowed to each of the several attorneys or firms who appeared.

[RENSSELAER SPECIAL TERM, November 21, 1870. *Learned*, Justice.]