Learned, J.
The defendants move to set aside an execution issued in each of these cases.
One ground of motion in the first case is, that one defendant was a minor when the judgment was recovered, and that the summons was never served.
It appears affirmatively by the opposing affidavits that the summons was personally served on both defendants, and that, after judgment, both defendants were examined on proceedings supplementary.
The judgment was recovered May 21, 1862, and it is averred that the defendant P. F. Grill had been doing business as a general partner, and in appearance was of full age.
A motion to set aside an execution more than ten years after judgment, on such a ground, and under such circumstances, cannot be granted.
There must be a limitation to the time when such a motion can be made, and the old limitation of two years after coming of age is liberal (McMurray v. McMurray, 41 How. Pr., 41).
A more important ground of motion exists as to the other defendant in the first action, and the sole defend *171 ant in the second. The judgment in the second action was recovered May 26, 1862. On August 16, 1867, the defendant James Grill, was discharged under the so-called two-third act. The execution which the defendant moves to set aside was issued August 1, 1872. A levy was made the same day on personal property, and the sheriff took the property into his possession. On the following day August 2, 1872, and not before that time, the petitions, &c., on which the discharge was granted, were filed and recorded according to the provisions of Laws of 1866, ch. 116.
The question which arises is upon the meaning of that act. The act requires that all the petitions, &c., upon which any such discharge shall be thereafter granted, shall, within three months from the granting thereof, be filed and recorded ; “ or such discharge shall be thereafter inoperative until such papers shall be duly filed and recorded as aforesaid.” The defendant claims that the recording of the papers on the day after the levy made the discharge operative as of the day when it was granted. The plaintiffs claim, that by the levy during the time when the discharge was inoperative they acquired vested rights which the subsequent filing of the papers did not discharge.
The defendant cites an unreported case, heard before a distinguished judge of the New York common pleas. He claims that a similar question was involved in that case, and was decided in accordance with his views, in April, 1869. From a certified copy of the affidavits and order in that case, it would seem that the defendant’s claim may be correct. But as no opinion was written, and as the case was not reported, I am unable to determine how much this objection was pressed on that motion, and how fully it was considered. Other objections were made to the discharge, and the plaintiff in the case may have relied principally on them. I am unable, therefore, to give that case the *172 same weight which would be due to the written opinion of that judge.
In constructing this law, we ought to consider that a discharge is an advantage obtained by the insolvent for his own benefit. It is reasonable that he should be held strictly to the performance of all the requirements of the act. He can file and record the papers when he pleases. If they are not filed and recorded, it is by his neglect or by his fraudulent concealment. The statute of 1866 gives him three months within which to do this; and probably if the papers are filed within that time, the discharge operates from the time it was granted. If he fails to file the papers within that time, and if there may be two constructions of the statute, one favorable and the other unfavorable to him, he is not entitled to the favorable construction. For he has voluntarily neglected or fraudulently refused the publicity which the statute requires and experience has found necessary.
The object of the statute was to give publicity and permanence to the proceedings for a discharge. It was intended for the benefit of creditors, that they might be able to know how the discharge had been obtained, so as to facilitate an investigation as to fraud. If the construction claimed by the defendant is correct the statute is practically of no effect. For instance, a creditor, believing a discharge to be fraudulent, sues on his debt; the debtor pleads his discharge, but keeps the papers in his own possession until the day of trial, and then files and records them. What opportunity has the creditor for examination, and of what benefit is the statute ?
Or if a creditor desires to bring an action to set aside the discharge as fraudulent, the debtor can to some extent prevent this by keeping those papers off from the file as long as possible, and putting them on only when he is driven to do so by some such proceed *173 ing as that of the creditors in this case. Again, the debtor, as in this present action, may allow the creditor to levy and perhaps to sell and collect; and then, by filing the papers make the discharge, as the defendant claims, operative as from the day it was granted; and thus, perhaps, recover damages for the illegal issue of the execution.
In all these supposed instances the creditor is powerless. He cannot file the papers nor compel their filing. He is at the mercy of the debtor (under the construction of the defendant), with no inducement operating on the debtor to make him file the papers.
On the contrary, there is no hardship whatever in requiring the insolvent to file his papers. To prevent the taking of any unfair advantage, the statute gives him three months within which to do this. And it does not make even that neglect entirely fatal to his rights. But it says, that, till he is willing to file the papers and show how he obtained his discharge, it shall be inoperative. This must mean something. It does not mean, as the defendant’s construction would practically make it, that the discharge shall not be used in court until the papers are filed. But it means that it shall have no operation—no effect—no validity.
An inoperative discharge is no discharge. The debts of the insolvent are in force. His creditors may issue execution and may levy. Undoubtedly, therefore, the levy in this case, when it was made, was good and valid. It took a part of the debtor’s property and extinguished so much of the creditor’s then undischarged debt. To the extent of the levy, it was, by operation of law, a payment on a debt which was at that time still in existence, unaffected by any proceedings of the debtor. For it must be borne in mind that up to this time the debtor, by his own act, had chosen to prevent his discharge from operating ; an act which he had a clear right to do. Having chosen then to keep *174 the judgment undischarged, can he say that the creditor does an illegal act in making the levy ?
But the defendant insists that though the levy was legal when made, the debtor may subsequently file the papers and thereby destroy the specific right which the creditor has acquired in his property.
Why should he have this retroactive benefit % This would be an interference with vested rights. It would be improper to put such a construction on the act unless the language imperatively needs it. I see no such necessity. The filing of the papers will make the discharge operative ; but if any rights to property have become meantime vested they will not become affected by the discharge.
It appears to me, that according to the construction of the defendant, the discharge is just as operative before the recording of the papers as after. For the defendant now insists that he has precisely the same right to have the execution set aside as he would confessedly have had if the papers had been recorded. In no sense then can the plaintiffs, on defendant's construction, say that the discharge was inoperative prior to the recording. Thus he nullifies the statute.
It was urged by the defendant’s counsel, that the plaintiff’s construction of the statute implied that the debtor was to be discharged from debts due at the time of the filing of the papers. Such is not my construction. A delay in the filing of the papers cannot make the discharge operate on debts arising subsequently to its date. But such delay may enable creditors, whose debts would otherwise be discharged, to obtain such vested rights in the debtor’s property that no subsequent filing of the papers will remove them.
The question is new and without precedent in the books. As it arises on the construction of a statute very little light can be thrown on it by elementary principles. If I should set aside the execution, and the *175 order should be reversed, probably the plaintiff’s opportunity of recovering his debt would be gone. On the other hand, if I err in refusing to set it aside, the defendant still has his remedy by appeal and otherwise (Cramer v. -, 3 Sandf., 700, Swart v. Sahlinger, 14 Abb. Pr., 391).
While, therefore, I am not wholly free from doubt, I shall deny the motions, with ten dollars costs in each.