## ROGERS *a.* McLEAN.

*Supreme Court, First District ; General Term, Dec.,* 1860.

PARTITION.—AMENDMENT.—APPOINTMENT OF GUARDIAN OF INFANT LUNATIC.

A purchaser at a judicial sale is not necessarily to be discharged on account of formal defects in the verification of a petition for the appointment of guardian for an infant defendant in the action in which the sale is decreed, or formal defects in the authentication of the verification ; but such defects may be supplied by amendment, *nunc pro tunc.*

After commencement of an action for partition, by service of summons on some of the defendants, the general guardian or committee of an infant lunatic who is named as a party and is interested in the subject-matter, may apply to the court for the appointment of a guardian *ad litem* for such infant lunatic, under the provisions of the Code. Personal service on such infant lunatic is not necessary.

If the petition of the committee in such case does not show that the infant lunatic resided with the petitioner, or was under his charge or custody, such omission, if it be a defect, may be cured by amendment after judgment.

Even if the provisions of 2 Revised Statutes, 317,—relating to proceedings for partition at law, upon petition,—can be deemed applicable to actions under the Code, those provisions only require notice of appointment of guardians to be served on resident minors, not on non-residents.

Appeal from an order made at special term, relieving Joseph Richardson from his purchase of certain premises sold under the judgment in partition in this action, on account of certain alleged irregularities in the proceedings.

The principal irregularity complained of, and that on which the decision at special term turned, was, that jurisdiction was not obtained of the person of the defendant, Samuel Mitchell, who was alleged to be an infant idiot, or lunatic, of the age of twenty years. It did not appear that process was served upon him, but after the suit was commenced, which was in October,

1854; a petition for appointment of a guardian for him was verified by William J. Mounts, in December, 1854, describing himself as the guardian of said Mitchell.

This petition was in the following form :

[TITLE OF THE CAUSE.]

To the Justices of the Supreme Court:

The petition of William J. Mounts, of Warren county, Ohio, the guardian of Samuel Mitchell, an infant idiot about twenty years of age, respectfully showeth :

That an action has been commenced against your petitioner's ward, in the Supreme Court of the State of New York, by William Rogers and Ann R., his wife, for partition of certain premises lately owned by Samuel S. Engle, deceased, situated in the city of New York. For a particular description of said premises reference is had to the complaint of the plaintiffs. But as your petitioner's said ward is an infant lunatic, as above set forth, he prays that S. B. Hilbert Judah, of the city of New York, counsellor-at-law, may be the guardian of your petitioner's ward in the defence of said suit, according to the statute in such case made and provided.

This December 1, 1854.

WILLIAM J. MOUNTS.

STATE OF OHIO, } *ss.* :
Warren County,

On this 19th day of December, A. D. 1854, personally appeared before me, Jno. C. Dunlevy, judge of the Probate Court within and for said county, the above-named petitioner, William J. Mounts, who, being by me duly sworn, on oath deposes and says : That the foregoing petition, signed by him, is *true* of his own knowledge, except as to the matters therein contained stated from information and belief, and as to those matters he believes it to be true.

WILLIAM J. MOUNTS.

Sworn and subscribed before }
  me, the day and year afore- }
  said. }

    JNO. C. DUNLEVY,
       Probate Judge.

THE STATE OF OHIO, ⎰ *ss.*:
  Warren County, ⎱

I, J. M. Warwick, clerk of the Probate Court within and for said county, do hereby certify, that John C. Dunlevy, before whom the above affidavit was taken, is sole judge of the Probate Court in and for said county, duly qualified and commissioned as such, and that said affidavit before him taken and acknowledged is in due form of law.

[L. S.]     Witness my hand, and the seal of said court, at Lebanon, this 20th day of December, A. D. 1854.

J. M. WARWICK,
Clerk Prob. Ct.

STATE OF OHIO, ⎰ *ss.*:
Warren County, ⎱

I, John C. Dunlevy, judge of the Probate Court in and for said county, hereby certify, that J. M. Warwick, whose certificate is attached above, is clerk of said court, duly commissioned and qualified as such, and that his certificate and attestation above is authentic, and in due form of law.

Witness my hand at Lebanon, this Dec. 20, A. D. 1854.

JNO. C. DUNLEVY,
Probate Judge.

I hereby consent to become the guardian *ad litem* of Samuel Mitchell in the above suit.

S. B. H. JUDAH.

December, 1854.

In January, 1855, an order was made at the special term in New York, appointing said Judah such guardian on his executing the proper bond, which was done; and thereafter said Judah put in an answer for said Mitchell in said action, and the suit was prosecuted to final judgment in 1859, the final decree reciting that Judah appeared as counsel for the defendant.

At the referee's sale of the premises, Richardson became the purchaser of the premises at $80,250, paid the ten per cent. required to be paid upon the purchase at the time, executed a memorandum or certificate of the purchase, and thereafter applied by petition to be discharged therefrom for the alleged

irregularities above mentioned, and others not material to be noticed.

Upon that petition, and upon opposing affidavits, the motion was heard at special term and granted. The decision is reported 10 *Ante*, 306. From that decision the plaintiffs appealed.

*Benjamin Billinge* and *Chas. W. Sandford*, for the appellants.—I. Personal service of summons is not necessary, a voluntary appearance being equivalent, either by infants or adults. (Varian *a*. Stevens, 2 *Duer*, 635, affirmed by Court of Appeals; Disbrow *a*. Folger, 5 *Abbotts' Pr.*, 53; Croghan *a*. Livingston, 17 *N. Y.*, 218; S. C., 6 *Abbotts' Pr.*, 350; Lyle *a*. Smith, 13 *How. Pr.*, 104; Wellington *a*. Claason, 9 *Abbotts' Pr.*, 175; S. C., 18 *How. Pr.*, 10; Carpenter *a*. New York & New Haven R. R. Co., 11 *How. Pr.*, 481.)

II. The appointment of a guardian *ad litem* for Samuel Mitchell, an infant idiot, residing out of the State, upon the petition of his guardian, was regular. 1. The committee of a lunatic defendant can have a guardian *ad litem* appointed as a matter of course. (New *a*. New, 6 *Paige*, 237; Heller *a*. Heller, 6 *How. Pr.*, 194; 1 *Barb. Ch.*, 86; *Shelf. on Lun.*, 424, 425; Wilson *a*. Grace, 14 *Ves.*, 172; *Story's Eq. Pl.*, § 70; 1 *Dan. Ch.*, 203; *Mit.*, 104.) 2. The equity jurisdiction and practice of the Supreme Court binds parties to a suit in partition independent of the statute. (Mead *a*. Mitchel, 17 *N. Y.*, 210; Croghan *a*. Livingston, *Ib.*, 218; S. C., 6 *Abbotts' Pr.*, 350; Myers *a*. Rasback, 4 *How. Pr.*, 83.) 3. Jurisdiction over infants is obtained by the appointment of guardians *ad litem*. (Mead *a*. Mitchel, 17 *N. Y.*, 210.) And this although the petition was not properly verified. (Disbrow *a*. Folger, 5 *Abbotts' Pr.*, 53.) 4. The Revised Statutes in relation to partition did not contemplate any service or notice upon minors out of the State: but provide for the appointment of guardians *ad litem* for such defendants by the court upon application. (2 *Rev. Stat.*, 4 ed., 577, § 2.) And these provisions *apply to actions* for partition brought under the Code. (*Code*, § 448. See Althause *a*. Radde, 3 *Bosw.*, 410, 432.)

III. The court has full power to amend at any time. (Croghan *a*. Livingston, 17 *N. Y.*, 218; S. C., 6 *Abbotts' Pr.*, 350; Althause *a*. Radde, 3 *Bosw.*, 410.)

IV. The order to discharge the purchaser was contrary to the interests of the infants, and the rights of all the parties, plaintiffs and defendants, and should be reversed, and an order made to compel the purchaser to complete his purchase.

V. The order allowing fifty dollars costs of motion is irregular, and so is the allowance of one hundred dollars for examining title.

*George T. Strong* and *Marshall S. Bidwell*, for the respondent.—I. The court will not reverse a judgment unless it is clearly erroneous. Even great doubts are not sufficient cause for interfering with the judgment. (Pearson *a*. Lynch, 1 *Moll.*, 603; Lloyd *a*. Ld. Trimblestone, 2 *Moll.*, 81; Wyatt *a*. Ingram, 3 *Hagg. Ecc.*, 469; 1 *Barb. Ch.*, 395.) Here the decision was *clearly* right.

II. The petitioner could not sue the referee. A petition to the court was the proper mode of proceeding. (Merritt's Case, 5 *Paige*, 125; 16 *Wend.*, 405, 421; Darrin *a*. Hatfield, *Seld. Notes of Ct. of Appeals*, Dec., 1852, 36; Read *a*. Fite, 8 *Humph.*, 328, 330.)

III. A purchaser is entitled to a good title. (McGown *a*. Wilkins, 1 *Paige*, 120; Marlow *a*. Smith, 2 *P. Wms.*, 198, 201; Ogilvie *a*. Foljambe, 3 *Mer.*, 53, 64; McDonald *a*. Hanson, 12 *Ves.*, 277; Costar *a*. Clarke, 2 *Edw. Ch.*, 428.) He will not be compelled to take a doubtful title, or one merely equitable. (McGown *a*. Wilkins, 1 *Paige*, 120; Morris *a*. Mowatt, 2 *Ib.*, 586, 590; Jervoise *a*. Duke of Northumberland, 1 *Jac. & W.*, 570; Fletcher *a*. Button, 4 *Comst.*, 396; Jackson *a*. Edwards, 22 *Wend.*, 498, 510; Creigh *a*. Shatto, 9 *Watts & S.*, 83, 84; Cook *a*. Farmer, 11 *Abbotts' Pr.*, 40, 41; Pyrke *a*. Waddingham, 17 *Eng. L. and Eq.*, 534; S. C., 10 *Hare*, 1.) Or one which may involve a lawsuit, or a difficulty of getting possession. (McGown *a*. Wilkins, 1 *Paige*, 120.) Or which depends upon a conveyance under a power of attorney. (*Sugd. Vend. and Pur.*, 10 ed., 437, pl. 13; Mitchel *a*. Neal, 2 *Ves. Sen.*, 679; Richards *a*. Benton, *Esp.*, 28.) Or which is subject to a life estate in an undivided part. (Spring *a*. Sandford, 7 *Paige*, 550, 555; Darrin *a*. Hatfield, *supra;* Bates *a*. Delavan, 5 *Paige*, 299, 307, 308.) Where an infant in a partition-suit was not properly brought in as a party, although after the master's sale,

having become of age, he offered to convey his share and interest to the purchaser, it was decided that the purchaser should be discharged from the purchase. (Kohler *a.* Kohler, 2 *Edw.*, 69.)

IV. A purchaser at a judicial sale, who is aware of irregularities in the proceedings, will take subject to the rights and equities affected by such irregularities, and will not be entitled to the privileges of a *bona-fide* holder. In such a case, therefore, he will not be compelled to complete his purchase, as he will not have a title that is unimpeachable or free from doubt. (Simonds *a.* Catlin, 2 *Cai.*, 61; Case *a.* Redfield, 7 *Wend.*, 398, 400; Curtis *a.* Hitchcock, 10 *Paige*, 399, 409; Colvin *a.* Luther, 9 *Cow.*, 61, 64; Jackson *a.* Anderson, 4 *Wend.*, 474; Swan *a.* Saddlemire, 8 *Wend.*, 676; Wormley *a.* Wormley, 8 *Wheat.*, 422, 450; Swayze *a.* Burke, 12 *Pet.*, 11, 25; Williams *a.* Hollingsworth, 1 *Strobh. Eq.*, 103; Sand's Heirs *a.* Ruddle, 2 *T. B. Monr.*, 139; Hoffman *a.* Stedhecker, 7 *Watt*, 89; Givan *a.* Doe, 5 *Black.*, 260; Enloe *a.* Miles, 12 *Sm. & Mar.*, 147.) And he will be discharged from his purchase, if there was error in the decree, although the parties are proceeding to rectify it. (Lechmere *a.* Brasier, 2 *Jac. & W.*, 287.)

V. Samuel Mitchell was a necessary party, and was named in the complaint as one of the defendants; but the summons was not served upon him, either personally or by publication; nor was there a voluntary appearance by him. It is now asserted that he was an infant and a lunatic, or idiot, and a non-resident. There was no averment and no proof of either of these facts. The only attempt to give any proof, was the petition of Mounts, but which contains no statement that Mitchell was a non-resident; and does not state how the petitioner became his guardian, or by what authority he was appointed; nor whether he was guardian of his person or his estate, nor what powers or authority he possessed under such appointment. The petition was not verified so as to entitle it to be read. It is not specified at what place the affidavit was taken. (2 *Rev. Stat.*, 396, § 26, subd. 1.) The clerk does not certify the genuineness of the signature of the judge, nor the existence of the court. (*Ib.*, subd. 2.) These particulars required by the statute cannot be dispensed with by the court, especially in a case where, if the person swore falsely, they could not be prosecuted

for perjury; and there is, at the best, little protection to the parties. (Titus a. Relyea, 16 How. Pr., 371; cited in Cook a. Farmer, 11 Abbotts' Pr., 40.)

VI. If it had been duly proved that Mitchell was a non-resident, an infant, and an idiot, the court had no jurisdiction of him. 1. This was an action under the Code. The only mode in which a suit can be commenced against a person under the Code, so as to give the court jurisdiction, is by service of a summons on him personally (Code, §§ 127, 134), or by publication (Ib., § 135), or by his voluntary appearance (Ib., § 139). 2. If it had been a proceeding under the Revised Statutes by petition, notice of the petition must have been served, before presenting the petition to the court. (2 Rev. Stat., 317, § 2; Ib., 319, §§ 12, 13; Ib., 320, §§ 79, 80.) Guardians must also have been appointed for infants, and bonds given by them. (2 Rev. Stat., 307, §§ 2–4.) The court has no power to authorize the sale of lands of an infant or others, except as given by statute. (Rogers a. Dill, 6 Hill, 415; In re Pettit, 2 Paige, 174, 596, Bloom a. Burdick, 1 Hill, 130, 138–142.) Under the Code, there must be service of summons, or appearance,—under the Revised Statutes, notice of petition,—to give jurisdiction.

The power to appoint guardians in suits against infants, does not supersede the necessity of service of a summons personally, or by publication, or of a voluntary appearance, to give the court jurisdiction. In all cases, it must be commenced in one of these modes. Before the Code, such service or advertisement was necessary. (1 Barb. Ch., 51, 52; Ontario Bank a. Strong, 2 Paige, 301; Minor a. Botts, 7 Paige, 596; Grant a. Van Schoonhoven, 9 Paige, 255. And see Pollard a. Groom, 2 J. J. Marsh, 487; Walker a. Bank of Mobile, 6 Ala., 452, 459.) A man alleged to be insane has a right to be heard on the question whether he is insane. (Chase a. Hathaway, 14 Mass., 222.) So one alleged to be a minor, ought to receive notice.

The Code gives no jurisdiction over any persons where there is not service, advertisement, or voluntary appearance. (Heller a. Heller, 6 How. Pr., 194; 1 Code R., 309; Cook a. Farmer, 11 Abbotts' Pr., 40.)

VII. These objections cannot be obviated by amendment. 1. This court, on this appeal, has no power to make amendment, as none was applied for at special term. The court has

no jurisdiction in these proceedings, except to determine the appeal. An application to amend can be made to the special term alone. 2. The purchaser cannot be required to wait till such amendments are made, and a new judgment obtained. (Kohler *a*. Kohler, 2 *Edw.*, 69 ; Lechmere *a*. Basier, 2 *Jac. & W.*, 287.) 3. The court has not power to bind infants or adults to a sale made before they were parties ; and still less to decree, now (before they are parties), that they shall be bound.

VIII. The purchaser was entitled to his costs and expenses, including counsel fees, which should come out of the fund, as all parties to the suit were actors on the sale, and the sale was, therefore, the act of all. (Kohler *a*. Kohler, 2 *Edw.*, 69 ; Pleasants *a*. Roberts, 2 *Moll.*, 507.)

*Charles O'Conor*, for the appellants, in reply.—I. Mitchell was an infant at the commencement of the action ; but he came of age within a year or two afterwards, and thereafter an attorney and counsellor of the court appeared for him. This is the appearance of an adult by attorney and counsel, and it disposes of the infancy-point. (*Code*, § 139 ; 1 *Barb. Ch.*, 149, 334.)

II. The objection that Mitchell was an idiot, is, if possible, less important. 1. By an ancient rule of the common law, the sovereign represents all idiot subjects or citizens ; and this branch of the administration having been devolved upon the chancellor at an early day, now reposes in this judicial tribunal as the high court of equity of this State. (*Shelf. on Lun.*, 12, 16 ; 17 Edw. II., ch. 9, § 10 ; Oxenden *a*. Compton, 2 *Ves.*, 69, 70 ; *Coke* (*on Magna Charta*), 2 *Inst.*, 14 ; 4 *Com. Dig.*, tit. *Idiot*, C.; *Chitty's Prer. of Crown*, 158 ; 2 *Rev. Stat.*, 173, § 36 ; *Judiciary Act, Laws of* 1847, 323, § 16 ; 2 *Rev. Stat.*, 52, § 1.) 2. It necessarily results that in a suit in equity concerning the lands of an idiot, he need not even be named as a party. The court represents him ; and so held Chancellor Kent, the father of equity practice in this State, nearly fifty years ago. (Exr. of Brasher *a*. Van Cortlandt, 2 *Johns. Ch.*, 242 ; S. C., *Ib.*, 400.) 3. The committee acting for an idiot or lunatic are merely agents of the court, acting under its direction. Their action is not indispensable. The court acts *ex officio* as a protector in respect to idiots or lunatics, as it does in respect to infants, on the information of whomsoever the court in its discretion thinks

fit to hear. (*Shelf. on Lun.*, 424; *Macp. on. Inf.*, 400; *In re* Perkins, 2 *Johns. Ch.*, 124.) The regular mode of defending a suit brought against an idiot is by guardian *ad litem*. Even where there is a committee, this is the regular course. The court will not always appoint the committee, if there be one, to defend as guardian *ad litem;* and when there is no committee, the court may appoint a guardian *ad litem*. (Sherwood a. Sanderson, 19 *Ves.*, 283; Wilson a. Grace, 14 *Id.*, 171; Howlett a. Wilbraham, 5 *Mad.*, 423; Anonymous, 3 *P. Wms.*, 111; Smith a. Palmer, 3 *Beav.*, 10; Shuttleworth a. Shuttleworth, 2 *Hare*, 147.)

III. It cannot be objected that the court had no power to act as protector to this idiot, and to represent him without the intervention of a committee. 1. The statute does not prescribe this as an indispensable formality. 2. The practice of requiring a commission of idiocy or lunacy, seems to have sprung from jealousy of the prerogative. (*In re* Barnsley, 3 *Atk.*, 171, 174.) And the sole object was to require full proof of idiocy before depriving the subject of his liberty or of control over his property. No other question but—Idiot or not, was determinable in that way. And it seems to be very doubtful whether that proceeding is applicable to a foreign idiot, not owing allegiance to the State or being personally within the State. As to such foreign idiots, the court will act on other proof than an inquisition. (*Exp.* Otto Lewis, 1 *Ves. Sen.*, 298; S. C., *Ambler*, 80; *Exp.* Gillam, 2 *Ves. Jr.*, 587; *Shelf. on Lun.*, 426; *In re* Elias, 7 *Eng. L. and Eq.*, 5.) It has been much doubted whether a commission was even proper in such a case. (*Exp.* Southcote, 1 *Amb.*, 109, 112; S. C., 2 *Ves. Sen.*, 400; *In re* Perkins, 2 *Johns. Ch.*, 124; *In re* Houstoun, 1 *Russ.*, 312; *In re* Bariatinski, 1 *Phillips' Ch.*, 377. Especially see *Stock's Non Compotes Mentis*, 94, cited by Ch. Walworth, 9 *Paige*, 417.) 3. If Mitchell was indeed and in fact an idiot, surely neither he nor his heirs can ever assert that fact, and, at the same time, complain that the court acted as that fact required, *i. e.*, appointed a guardian *ad litem*.

IV. The court had jurisdiction of the subject-matter, *i. e.*, a partition of lands lying within its jurisdiction. (Monroe a. Douglas, 4 *Sandf. Ch.*, 180, 184.) The court is a court of record of the highest grade, having general jurisdiction, and its cogni-

zance of the parties cannot be impeached by evidence contravening the record. (Chemung Bank *a.* Judson, 4 *Seld.*, 260, 261; Croghan *a.* Livingston, 17 *N. Y.*, 220; S. C., 6 *Abbotts' Pr.*, 352.) The record shows jurisdiction in this, that there is a guardian *ad litem*, or an attorney appearing for the defendant, as the case may require; and *quacunque via data* the judgment is valid. This is not reversible on appeal. (*Code*, § 11.) A motion to set aside the proceedings could not be sustained. (Dunn *a.* Dunn, 4 *Paige*, 425.) An original action would not lie to vacate the judgment. (Monroe *a.* Douglas, 4 *Sandf. Ch.*, 191, 192.)

V. The defendant, Mitchell, could not have appeared otherwise than through the agency of a guardian *ad litem* appointed by the court *proprio motu*, or on the application of the plaintiff or of some friend. He has so appeared, a protracted and hostile litigation has ensued, and, if the proceedings are all void merely because a summons which he could not understand was not handed to the idiot, or because an advertisement which he could not read was not published in a paper one thousand miles from his dwelling-place—forms the most idle and useless in fact, are more important in law than has generally been supposed.

*Marshall S. Bidwell*, for the respondent, in reply.—I. The case of Brasher *a.* Van Cortlandt (1 *Johns. Ch.*, 245, 401), cited by Mr. O'Conor, was a suit in equity by creditors of a lunatic against his committee to obtain payment of a debt. The chancellor held that the court could order payment without suit, under the statute (1 *R. L.*, 147); and that, in that case, all the provisions of that statute were complied with in substance, so that, without the form and expense of a petition, &c., the court had power to make the same orders as if a petition had been presented. (It has since been held that a suit in such a case is not only unnecessary, but improper. *In re* Heller, 3 *Paige*, 199.)

II. The decision was founded entirely on the statute, and the fact that there was a committee duly appointed in this State. Here there was no such committee, and even if there was sufficient evidence of the appointment of Mounts as guardian, and that could be considered equivalent to an appointment of him as committee, yet the court could not act upon it. (*In re* Perkins, 2 *Johns. Ch.*, 124; *In re* Petit, 2 *Paige*, 174.)

The court has no power to authorize a sale of the real estate of an infant or lunatic, except in cases prescribed by statute, viz., for debts or maintenance. (*In re* Petit, 2 *Paige*, 596; Rogers *a.* Dill, 6 *Hill*, 416.) In partition suits, its power to authorize a sale is not derived from its general jurisdiction over their estates, but from statute; and in such cases it has no other power over the shares of infants, lunatics, &c., than of adults.

III. The plaintiff cannot set up that Mitchell was an adult.

He has proceeded and taken judgment against him as an infant idiot, and he is not at liberty to deny his infancy or idiocy.

IV. But Mr. Richardson is not so estopped, and may say that if the proceedings would be binding on Mitchell if he were an infant idiot, yet the plaintiff has not proved that fact. If the judgment were not binding on him, as an infant idiot, there is an end of the case, because he may have been an infant idiot; but if it were in such a case binding on him, then the question is, *first,* was it proved that he was an infant idiot? *secondly,* if it were, would he (if not an idiot lunatic) be bound by the judgment?

The paper purporting to be a copy of the order of the court in Ohio, appointing Mounts guardian of Mitchell, was not proved in the manner prescribed by law; but if it were duly proved, it would not, in this court, be evidence of infancy or idiocy. (Morrill *a.* Dickey, 1 *Johns. Ch.*, 156; *In re* Perkins, 2 *Id.*, 124; Williams *a.* Storrs, 6 *Id.*, 353, 357; *In re* Petit, 2 *Paige*, 174; Chapman *a.* Fish, 6 *Hill*, 554; Stacy *a.* Thrasher, 6 *How.* (*U. S.*) 58; 2 *Kent's Com.*, 227 (n. *b.*); 432 and (n. *c.*); *Story's Confl. of L.*, 414.)

V. The rule laid down in Denton *a.* Noyes (6 *Johns.*, 298), that the party is bound, though the attorney had no authority, does not govern the case. 1. It has no application here, because the answer purported to be the answer of Mounts, not of Mitchell. 2. On the face of it, and of the papers on which it was founded, the plaintiff was expressly notified that Mr. Judah had no authority from Mr. Mitchell to appear as his attorney.

3. Mr. Judah did not, even in the amended answer, appear as Mitchell's attorney, but merely as his guardian *ad litem.*

4. If Mitchell were insane, Mr. Judah could not have appeared for him as attorney (Elliott *a.* Elliott, 1 *Carter* (*Ind.*), 119.)

Moreover, it has been overruled, and now exploded. (Robson *a.* Eaton, 1 *T. R.*, 62; Wheatley *a.* Bastow, 7 *De G. Mac. & G.*, 261; S. C., 1 *Jurist* (*N. S.*), 1124; Depeu *a.* Keeling, 4 *Car. & P.*, 102; Bayley *a.* Buckland, 1 *Exchequer* (*Welsby Hurls. & G. R.*); S. C., 5 *Dowl. & Lown.*, 115; D. D. Hammek *a.* Fillis, 2 *Chitty*, 170; D. D. Shepherd *a.* Roe, *Ib.*, 171; Allen *a.* Stone, 10 *Barb.*, 547; People *a.* Mayor of N. Y., Taylor and Brennan, 11 *Abbotts' Pr.*, 71, 72; Hess *a.* Cole, 3 *Zab.*, 116; Frye *a.* Calhoun Co., 14 *Ill.*, 132.)

VI. There is no difficulty in proceeding regularly against an infant lunatic who is a non-resident. 1. A committee may be appointed for him. (*In re* Perkins, 2 *Johns. Ch.*, 124; *In re* Petit, 2 *Paige*, 174.) 2. In a partition-suit, jurisdiction over him may be obtained by a publication under the Code. That will give him an opportunity to come in and show that he is not a lunatic. (Chase *a.* Hathaway, 14 *Mass.*, 222.) The law has prescribed this mode of acquiring jurisdiction, and the court cannot disregard it. And they surely will not do it, where the inheritance is to be bound; they will not, in such a case, deprive a man of any safeguards which the law has thrown around him for his protection. (Titus *a.* Relyea, 16 *How. Pr.*, 371, cited in Cook *a.* Farmer, 11 *Abbotts' Pr.*, 41.)

In the case of Monroe *a.* Douglas (4 *Sandf. Ch.*, 184), the vice-chancellor says, that the "party cannot be permitted to show that he never had any notice of the suit, otherwise than by showing that the notice required by the local law was not given."

In this case, the local law required that notice should be given by service of the summons (either personally or by publication), or that there should be a voluntary appearance.

Accordingly, Mr. Mitchell would be at liberty to show that he had not received such notice; and in fact he could show it. If he did, the judgment as to him would be void.

By THE COURT.—HOGEBOOM, J.—In this case the purchaser asked to be relieved from his purchase of premises bought at a sale in partition, and the case comes up on the appeal of the plaintiff, from the order of the special term releasing him from his bid.

The principal defect or irregularity consists in the alleged

want of jurisdiction of the court over the person of Samuel Mitchell, a supposed infant and idiot, or lunatic, by reason of which he is not bound by the proceedings and decree in this action.

The facts in regard to this party, on which this question arises are these.

This is a suit in partition respecting lands in the city of New York, and of which the court has therefore general jurisdiction, in which a large number of parties are named as defendants, and among others Samuel Mitchell. As to many of these defendants, it is undisputed that the court acquired jurisdiction of them either by the service of process, or by their voluntary appearance. There was therefore a suit properly commenced, in which Mitchell, among others, is named as defendant. He was not served with process. He did not in person, or by his own voluntary act, put in an appearance; nor was any notice, or other paper served upon him in the suit; nor was publication made or ordered as to him, so far as appears from the papers in the case.

Mitchell was named in the complaint as entitled to an undivided twentieth part of the premises, but (as was usual) neither his residence, age, or mental condition was stated in the complaint.

Civil actions shall be commenced by the service of a summons. (*Code*, § 127.) A summons must be served (except where service is by publication) by delivering a copy thereof to the defendant personally; and if of unsound mind, and having a committee (§ 134), then also to such committee. A voluntary appearance of a defendant is also equivalent to personal service of the summons upon him. (§ 139.) None of these things have been literally done, and this defendant, if an idiot, or a lunatic, is incapable of making or directing a voluntary appearance.

The question remains whether any thing else has been done legally equivalent to the service of process, or sufficient to give the court jurisdiction of the person of the defendant Mitchell.

The action appears to have been commenced, at least, the complaint appears to have been verified, in October, 1854. In December, 1854, William J. Mounts, describing himself as the guardian of Samuel Mitchell, an infant idiot, of about the age

of twenty years, subscribed a petition to this court, setting forth the commencement of this action; declaring that the "petitioner's said ward is an infant lunatic as above set forth," and praying that Mr. Judah might be the guardian of the petitioner's ward in the defence of said suit.

This petition was verified on the 19th of December, 1854, and states that the petitioner appeared before John C. Dunlevy, judge of the Probate Court within and for said county, and being sworn, stated that the same was true of his own knowledge, except as to matters stated on information and belief, and as to them that he believed it to be true. It is objected that the act of Congress requires the place, where the affidavit was taken, to be stated, and that this verification is defective in that particular. But it is headed, "State of Ohio, Warren county, *ss.*," and this, taken in connection with the certificate of the judge, which admits of the construction that the petitioner appeared before him within said county, and with the legal presumption in favor of the probable knowledge and compliance by the judge with the formalities of wla, is sufficient, I think, to overcome that objection. The same considerations, perhaps, should induce us to overrule the objection, that the clerk of the Probate Court has not certified to the genuineness of the signature of the judge. He certifies that "John C. Dunlevy, before whom the above affidavit was taken, is sole judge of the Probate Court in and for said county;" and the judge again certifies to the authenticity and regularity of the clerk's certificate. I am inclined to think this is sufficient; but if it were not so, I think the proper course would be, not to discharge for that reason the purchaser from his bid, but to allow a proper certificate, both on the part of the judge and the clerk, to be procured and filed *nunc pro tunc*, and only to discharge the purchaser on failure to procure and file the same within a specified time, to be fixed by this court.

The petition was presented to Justice Roosevelt at a special term, on the 4th of January, 1855, and an order entered thereon, that Mr. Judah be appointed guardian *ad litem* of the above-named defendant, with others. He was also ordered to file a bond in the penal sum of $250, as such guardian, which was done; and he thereafter answered as such guardian, and conducted the subsequent proceedings for this defendant. In the

final decree for sale, Mr. Judah is recited as appearing as counsel for all the defendants, and for the guardian *ad litem* of all the infant defendants. There appears to be no proof in the case as to the infancy and idiocy or lunacy of Mitchell, beyond what is contained in the petition and order above mentioned, except that annexed to the papers used in opposition to the motion in this case, for the discharge of the purchaser, is what purports to be a copy of an appointment of William J. Mounts, as guardian for Samuel Mitchell, an idiotic person aged about twenty years, of Warren county, Ohio. This appointment was made by the Probate Court of Warren county, Ohio, on the 13th day of October, 1854. The question, therefore, seems to be, whether on the petition of a guardian, thus made and presented, this court had authority, without service of process or voluntary appearance, to appoint a guardian of Samuel Mitchell, and conclude him by the proceedings in this suit. On the one hand, it is contended that the court possesses this power by virtue of its inherent authority over the persons and estates of infants, lunatics, and idiots, and may exert it upon its own motion, without suggestion from any quarter; or may take such measures to enlighten itself, as it may think proper, in regard to the infancy or lunacy of any party, and the proper person to be appointed committee or guardian *ad litem* for such person; and having exercised this power in the present case, in a manner satisfactory to itself, its action is conclusive and the proceedings regular. On the other hand, it is contended that service of process, or voluntary appearance, is the only mode of bringing any party into court; that the Revised Statutes expressly require notice to be served upon the infant; and that it is only after such service made upon the proper person and in the regular way, and upon the petition of the infant, or his committee or guardian appointed in this State, that jurisdiction can be acquired of the infant and lunatic, or a guardian *ad litem*, appointed for him; and that in the event of this not being done, the proceedings are *coram non judice*, and void.

The important, if not the only serious question in the case is, whether the defendant Mitchell is or is not bound by the proceedings in the suit. And on the part of the purchaser it is said in the first place, that the provisions of the Revised Statutes have not been followed, and therefore the infant is not bound.

Those provisions (2 *Rev. Stat.*, 317) relate to proceedings at law for the partition of lands, but are in substance probably applicable also to proceedings in equity (*Ib.*, 329), if they are not superseded by the provisions of the Code or the general practice of the courts in relation to the mode of commencing suits and appointing guardians *ad litem.* Section 2 provides for the appointment of guardians for minors (preliminary to the service of the petition for partition), as well non-resident as resident, by a previous service of a notice of ten days on the resident minors. Section 12 provides that after such appointment, the service of the petition and notice of presentation shall be made on non-resident parties, minors, or of full age, by a three months' publication in the State paper, and in a newspaper printed in the county where the premises are situated.

But the proceedings are in their nature inappropriate to an action for partition under the Code. And, therefore, they are not required to be strictly followed (*Code*, § 448), although it has been held in the Superior Court of New York, that in a suit under the Code, a guardian in partition cases may be appointed previous to the commencement of the action. (Althause *a.* Radde, 3 *Bosw.*, 410.) At all events, it cannot be doubted that an appointment, pursuant to the provisions of the Code, would be legal and binding.

By section 115 of the Code, where an infant is a party, he must appear by guardian. In this case the infant is a party-defendant. He is a party to the suit, when he is named as a party in the summons and complaint, and is shown thereby to have an interest in the subject-matter of the action, and where the suit is actually commenced against some of the persons named as the defendants therein. And this is especially so, where he appears to have a joint interest, or an interest in common with others. In such event he becomes a party to the suit as well before as after the service of process upon him. Therefore if an infant, he is not obliged to wait until the actual service of process upon him, before he procures the appointment of a guardian *ad litem.* (Varian *a.* Stevens, 2 *Duer*, 635.) So also he may voluntarily appear and have the proceedings dismissed if irregular or void. (Lyle *a.* Smith, 13 *How. Pr.*, 104.) So also he may on his own motion procure the appointment of a guardian *ad litem*, serve an answer to the merits of the action,

and compel the plaintiff to receive it. (Wellington a. Claason, 9 *Abbotts' Pr.*, 17; S. C., 18 *How. Pr.*, 10.)

Mitchell then having become a party-defendant to a suit in partition, and being an infant over the age of fourteen years, and an idiot, or a lunatic, a guardian was to be appointed for him. (*Code*, § 116.) Properly, if the infant had been of sound mind, the guardian could and should have been appointed upon the petition of the infant himself. (§ 116.) But in the present case this was of course impracticable. A petition from a lunatic would have been useless and nonsensical; and strictly speaking the Code does not provide for the case of a lunatic infant over fourteen years of age. It must be regulated therefore by the established practice of the court, and by sound judicial discretion. In analogy to the mode of procedure required where the infant is under fourteen years of age, and founded upon the want of discretion supposed to attach to infants of such tender age, perhaps it would be wise to exact notice to the person with whom the infant resides, where the application for the appointment of a guardian is by a relative or friend of the infant, and he has no guardian. But in this case he has a guardian (extra-territorial to be sure). And it is fair to presume that the lunatic resides with, or is under the immediate charge and control of, such guardian; and if proof is necessary upon this subject,—in the absence of any evidence to the contrary,—I think it may be supplied hereafter *nunc pro tunc* by way of amendment. (*Code*, § 173; Croghan a. Livingston, 17 *N. Y.*, 218; S. C., 7 *Abbotts' Pr.*, 352.)

If the Revised Statutes are to govern, I perceive no section which is directly applicable to the case in hand, unless it be section 2, of the title in regard to the partition of lands before quoted (2 *Rev. Stat.*, 317, § 2), and that only requires notice to the resident minors of intention to apply for the appointment of guardians, both for the resident and non-resident minors.

If we refer to the mode of commencing a suit against a person, judicially declared to be of unsound mind, we find that it is to be commenced by service of the summons upon the defendant and upon the committee (or, as he appears to be termed in Ohio, the guardian). (*Code*, § 134.) This is essential, doubtless, to enable the plaintiff to obtain a regular and compulsory judgment where the adverse party does not appear. But I can-

not suppose it to be indispensable where such adverse party does appear, in the only mode in which he can (in the case of a lunatic) possibly appear, that is through the medium and intervention of a third party. In such case, if the committee or guardian present the petition to the court for a guardian *ad litem*, it comes from the most proper person who can possibly represent the party, and in the appropriate and commendable exercise of his functions as such committee or guardian; and if, in addition, the petition itself discloses the fact that a suit in partition has been commenced against such infant and lunatic, and this fact is not disputed, I cannot but think that the court obtains jurisdiction of the person of the lunatic and infant defendant; so far at least as to conclude him in the suit in regard to the lands lying in the State of New York.

The practice pursued in this case to effect an appearance of the lunatic, seems to be in accordance with the usual practice of courts of equity, where a lunatic is made a defendant in an action (1 *Barb. Ch. Pr.*, 86, and cases and books there cited), and must, I think, be conclusive upon the defendant accordingly. As this practice is supposed to be ample to protect the rights of the lunatic, the additional disability or quality (if I may so term it) of infancy, ought not perhaps to be regarded as imposing additional restrictions or difficulties in the way of procuring his appearance in the action; and especially so, as none of the requirements of the Code in regard to the appointment of a guardian *ad litem*, seem directly adapted to the case of an infant idiot or lunatic.

Further, the Code (§ 139) provides that the "voluntary appearance of a defendant is equivalent to personal service of the summons upon him." The spirit of this enactment has been held to be complied with, by the voluntary appearance and procurement of a guardian *ad litem* by an infant defendant over the age of fourteen years, without the actual service of process upon him. (Varian *a.* Stevens, 2 *Duer*, 635; approved in Wellington *a.* Claason, 9 *Abbotts' Pr.*, 175; S. C., 18 *How. Pr.*, 10.) If this distinction is correct, and it seems to me to be so, I am unable to see why it should not be extended to the voluntary appearance of an infant lunatic defendant, over the age of fourteen years, without the actual service of process upon him, provided the requirements of the Code, so far as they are appli-

cable, and in the absence of any express requirements, the established practice of a court of equity, are observed in effecting his appearance, and procuring the appointment of a guardian *ad litem.*

I am of opinion, therefore, that none of the objections of the purchaser to the validity of the partition proceedings, as against the defendant Mitchell, are well taken, to that degree that they are incapable of being remedied by amendment. I have not examined any other objections than those relating to the defendant Mitchell, because none other were examined at the special term, and because it seemed to be taken for granted, that unless the purchaser could prevail on these, the others would be unavailable.

I conclude that the order of the special term should be reversed, and the purchaser be required to complete his purchase, provided the plaintiff, within forty days after the entry and notice of the order as finally settled upon this decision, shall procure and file with the clerk of this court, where the other papers in this cause are filed, an amendment of the petition of William J. Mounts, to the effect that his infant or lunatic ward was, at the time of verifying his original petition, residing with him, or under his charge or custody; and an amendment of the jurat or certificate of the judge attached thereto, stating the place where the said petition was verified and affidavit was taken; and an amendment of the certificate of the clerk, so that it shall, in addition to its present contents, certify to the existence of the court and the genuineness of the signature of the judge. Such amendment when made, to be deemed made *nunc pro tunc;* and if not made and filed as aforesaid, then that the order of the special term (except so far as it allows more than $10 costs of motion, in which particular, it should, in any event, be reversed) be affirmed.

In either event,—of affirmance or reversal,—the petition is entitled to $10 costs of the special term, and $10 costs of appeal.

SUTHERLAND, J., concurred.

BONNEY, J., dissented.