WILLIAM S. ROGERS AND WIFE *v*. JOHN McLEAN and others.

The fact that one of the parties interested in the partition of an estate is an infant, lunatic, &c., will not deprive other parties in such interest of their right to a partition and sale of the premises so held in common by them.

But, before the interest of the infant or lunatic therein can be disposed of, and his title be vested in a purchaser, he must, in some proper form, be brought before the court, and his rights be passed upon and protected.

If, in bringing the ward into court, or in the proceedings before the court, there has been any irregularity, that may be cured by subsequent amendment under the order of the court having jurisdiction of the parties and the subject-matter.

*M. S. Bidwell*, for the appellants.

*C. O'Conor* and *C. W. Sandford*, for the respondents.

DAVIES, Ch. J.   This action was commenced for the purpose of effecting a partition and sale of a certain house and lot, whereof Samuel S. Engle died siezed, situated in the city of New York.   At the sale of said premises, pursuant to the judgment of the Supreme Court, they were struck off to the petitioner, Joseph Richardson, for the sum of $80,250, he being the highest bidder therefor.   The said purchaser objected to the completion of his purchase on various grounds, and declined to complete the same.

Subsequently he presented his petition to the Supreme Court, praying that he might be discharged from such purchase-money, and that the ten per cent. paid at the time of the sale by him might be returned to him, with interest, and the costs and expenses to which he had been subjected by reason of said purchase might be refunded to him.

Said application coming on to be heard at a Special Term of the Supreme Court held in the city of New York on the 12th day of March, 1860, the prayer of the petitioner was granted, and the petitioner was discharged from his purchase. On appeal to the General Term the order was reversed, and it was ordered that the petitioner be required to complete his purchase, provided that the plaintiffs, within forty days after

entry and notice of that order, should procure and file with the clerk of the court an amendment to the petition of William J. Mount, to the effect that Samuel Mitchell, his infant, a lunatic ward, was, at the time of verifying his original petition, residing with him, or under his charge or custody, and an amendment of the jurat or certificate of the judge attached thereto, stating the place where said petition was verified, and affidavit taken and an amendment of the certificate of the clerk, so that it shall, in addition to its present contents, certify to the existence of the court and the genuineness of the signature of the judge, which amendment, when made, shall be deemed to be made and filed *nunc pro tunc*. If not so made and filed as aforesaid, then the order of the Special Term was to be affirmed, except in some unimportant particulars as to costs. The petitioner has appealed from this order, and in our consideration of his appeal, we are to assume that these amendments have been made, as directed by the order of the General Term, and to regard the proceedings, in determining their legal effect, as amended accordingly.

The main objection to the title, as urged in the Supreme Court and insisted on here, is that Samuel Mitchell, who was seized of one undivided twentieth part of said premises, had not been made a party properly to said partition suit, and that, therefore, the purchaser at said sale had not acquired his interest therein. The notice of the pendency of the action was filed on the 11th day of November, 1854. It appeared from the proceedings in the action, that on the 4th day of January, 1855, there was presented to the Supreme Court, at a Special Term thereof, a petition by William J. Mount, entitled in said suit, setting forth that the petitioner was the guardian of Samuel Mitchell, an infant idiot, about twenty years of age. That an action had been commenced in the Supreme Court of this State for a partition of the premises in question ; but that as the petitioner's said ward was an infant lunatic, as above set forth, the petititioner prayed that S. B. H. Judah, of the city of New York, counselor-at-law, might be appointed the guardian of the petitioner's ward in

the defense of said suit, according to the statute in such case made and provided.

This petition was dated December 1st, 1854, and sworn to in Ohio, before the judge of the Probate Court of Warren county in said State, on the 19th day of December, 1854, by the said Mount, and to which was annexed a consent signed by said Judah, consenting to become the guardian *ad litem* of said Mitchell in that suit. At a Special Term of the Supreme Court, held on the 4th day of January, 1855, an order was made and duly entered, reciting that on reading and filing the petition of Samuel Mitchell, idiot, showing that said defendant was an infant, appointing said Judah guardian *ad litem* of said infant defendant, on giving the security as therein provided. Mr. Judah put in an answer for Samuel Mitchell, an infant idiot, submitting his rights and interest to the protection of the court, which was duly verified on the 6th day of January, 1855, and was filed March 12th, 1860, as of the 7th of April, 1859. The cause was brought to a hearing on the 7th day of October, 1859, and the usual judgment of partition and sale entered. And in said judgment it was ordered, that the referee charged with the sale of said premises should pay unto the chamberlain of the city of New York the part or share which of right belongs to the said Samuel Mitchell, who, it was therein declared, is an idiot, being the one-twentieth part of the net proceeds of said house and lot, there to abide the further order of said court.

The court had undoubtedly the power to make the amendments ordered at the General Term, and as already observed in the discussion upon this appeal, the proceedings are to be deemed amended in accordance with this order.

The power of the court, in a partition suit, to order the proceedings to be amended, was fully considered by this court in *Croghan* v. *Livingston* (17 N. Y., 218). That was an appeal from an order made in the Supreme Court in an action for partition, compelling the appellants who had jointly purchased a part of the property at the sale to complete their purchase. One of the defendants in the action

being an infant more than fourteen years of age, Schuyler Livingston, her father, was, upon her petition, appointed her guardian *ad litem*, by an order entered October, 2, 1856. He appeared and put in the usual general answer of an infant. A judgment was rendered directing the sale of the real estate described in the complaint. The appellants became the purchasers and refused to complete their purchase. Their objection to the title was that Schuyler Livingston had never filed any bond as guardian. After the appellants' refusal to complete the purchase, Mr. Livingston executed a bond, which was duly approved as to its form and sufficiency of sureties. Upon filing an affidavit proving that the omission to execute the bond in due season was unintentional and resulted from the neglect of the clerk of the attorney, an order was made by the court at Special Term, directing the bond to be filed *nunc pro tunc*, as of the 2d of October, 1856, the date of the order appointing the guardian, and to have the same effect as if it had been filed on that day. The plaintiffs, upon these facts, applied for an order requiring the purchasers to complete the purchase, and such an order was made at Special Term. On appeal to the General Term, the order was affirmed with some modifications not needful to mention. (25 Barb., 336.)

On appeal to this court, the order of the General Term was affirmed. As the principal points relied upon by the counsel for the appellant, on this appeal for his discharge from his purchase, were considered and disposed of at that time, it can hardly be necessary to reconsider or rediscuss them. It was held and decided that the Court of Chancery had original jurisdiction of an action for partition, without the aid of the statute. That the plaintiff was not bound, in his bill, to notice the fact that the defendants, some or all of them, were infants, but he might frame his bill and issue his subpœna as if they were all adults. After they were brought in upon process, it was necessary, both at law and in equity, that guardians should be appointed for the infant defendants, but that no law could be found holding that a judgment or decree, when they appeared by attorney, would be void. It is

to be recollected that, in this case, the infant defendant, Mitchell, appeared by his attorney, who was also duly appointed his guardian *ad litem;* and, regarding him only as an infant, it is difficult to see what irregularity there was in such appearance; even if no guardian had been appointed, the omission of such appointment did not deprive the court of jurisdiction even at common law.

That, in equity, the infant became the ward of the court, upon the service of the process upon him, and the guardian *ad litem* was but the agent of the court to attend to his interests during the litigation; and it was said, " if the failure to appoint a guardian at all did not render the proceedings void, for a much stronger reason the failure of the guardian, when appointed, to comply with all the requirements of the statute, would not deprive the court of jurisdiction and render the proceedings void."

Secondly, it was held that the statute did not change the rule in regard to actions for partition, and that the utmost that could be claimed, on the assumption that no guardian *ad litem* had been appointed, was, that the proceedings were irregular merely, and not void.

Thirdly, it was assumed, then, that the proceedings were not void, and that no good reason existed why the court had not the power to order them amended.

Aside from the Code, the power of the Court of Chancery was adequate to order such an amendment. It was said that even if the infant had not been made a party at all, and the defect had been discovered immediately after the sale, there was no reason why the court might not have directed her to be brought in, by supplemental complaint, and after the appointment of a guardian, if it appeared best for the infant, the court, by consent of the guardian, might have made an order directing the judgment to stand good as against her, and allowing her to receive the benefit of the sale. This, in substance, has been done in the present action, and the proceeds of the share of the infant's interest in the premises sold have been brought into court, and now remain there, subject to its order, for the benefit of the infant.

The circumstance that one of the parties interested in this estate was an infant, lunatic or idiot, could not deprive the other parties interested therein of their right to a partition and sale of the real estate so held in common by them, nor the court of its jurisdiction. Before the share or interest of the infant, lunatic or idiot could be disposed of, and his title thereto vested in a purchaser, he must, in some proper form, have been brought before the court, and his rights passed upon and protected. It is seen that this has been done, and if there was any irregularity in the manner of doing it originally, that irregularity has been cured by the subsequent amendment, which the court had clearly the power to make, under the authority of *Croghan* v. *Livingston* (*supra.*)

If Mitchell had been, therefore, solely an infant, it cannot be insisted, in the face of this decision, that the proceedings as to him have not been regular, and that the purchaser, by this sale, has not acquired all his right, title and interest of, in and to the property in question.

But if he was an idiot or lunatic, then he was a non-resident idiot or lunatic, and the proper course was pursued in appointing a guardian *ad litem* to appear for him, upon the petition of his guardian, a committee residing in the State of Ohio.

By his petition, as amended, it appears that at the time of the commencement of this action, Mitchell was an infant of about twenty years of age. Properly, therefore, the guardian *ad litem* should have been appointed on his petition, but the additional fact appears that he was an idiot or lunatic. He could perform no act, therefore, in reference to his appearance in the action. It would have been absurd for him to have presented his own petition to the court for the appointment of a guardian *ad litem*. It further appears from the petition that William J. Mount, residing in the State of Ohio, was the guardian of said Mitchell, and that at the commencement of this action, said Mitchell was in the care, charge, custody and control of said Mount, and said Mount therefore prayed that Mr. Judah might be appointed the

guardian *ad litem* to protect the rights and interests of said infant, idiot or lunatic in this action. He was accordingly appointed, and if the court had the power on the application of Mount to appoint such guardian, there is an end to any further doubt as to the rights of Mitchell to the property in question having passed to the appellant by the proceedings for partition and sale in this action.

1. A voluntary appearance of the defendant is equivalent to personal service of the summons upon him. (Code, § 139.) It was not essential, therefore, that a summons should have been, personally or by publication, served on either the idiot or lunatic, or upon his guardian, or committee or person having him in charge. If an idiot or lunatic is made a party defendant to an action, he must appear and defend by the committee of his estate, if one has been appointed. (1 Barb. Ch. Pr., 86.) And in cases where there is a committee, he generally applies, by motion or petition, to be appointed guardian to answer and defend the suit, which is ordered of course. (Id., 86.) The committee or guardian in this instance, residing out of the jurisdiction of the court, properly applied by petition for the appointment of a guardian *ad litem*, residing within its jurisdiction, and an officer of the court. The accustomed and well-settled practice was pursued in the appointment of the guardian *ad litem* in the present case; and the proceedings in the partition suit have, in my judgment, been entirely regular, and there is no allegation or ground to infer that the interests of the defendant Mitchell, whether we regard him as an infant, or lunatic, or idiot, or all combined, have not been fully protected and carefully guarded. I am for affirming the order appealed from, with costs, to be paid by the appellant.

LEONARD, J. (dissenting). The court below have held in this case that a lunatic defendant can voluntarily appear, and that a guardian *ad litem* may be appointed for him by the court, in an action for the partition of land situated in this State, in which the lunatic owns an interest, on the petition of a general guardian appointed by a court in another State,

with whom the lunatic resides, without any service of the summons, either personally or by publication.

At the sale of the premises under the decree in partition, they were bid off by Joseph Richardson for the price of $80,250.

After an examination of the title, an objection was taken to the regularity of the judgment under which the sale was made, for the reason, among other things, that one of the heirs had not been served with the summons, and the petition for the appointment of a guardian *ad litem* disclosed the fact that he was an infant and an idiot or a lunatic, and that the petitioner was his guardian, appointed by the Probate Court in Warren county, Ohio, not claiming any authority as a committee or guardian of the person or estate of the lunatic infant by virtue of an appointment under the laws of New York. Mr. Richardson thereupon applied to the court below at Special Term to be relieved from his purchase, and for the return of the ten per cent of the purchase-money deposited at the sale, with interest and the expenses incurred about the examination of the title. This motion was granted, with an allowance of $100 for the expenses, and $50 for the costs of the motion.

The General Term reversed this order on an appeal, and Mr. Richardson was required to complete his purchase, provided the plaintiff, within forty days, procured an amended petition, to be filed by the Ohio guardian, showing that the lunatic resided with him, or was under his immediate charge at the time of verifying his former petition; such amended petition to be filed *nunc pro tunc*. If not so amended, the order of the Special Term was affirmed, except as to the costs of the motion, which were reduced to ten dollars, and ten dollars costs of the appeal were also allowed to the purchaser. From this order of the General Term the purchaser now appeals to this court.

The practice of the plaintiff has proceeded upon the theory that a foreign guardian was authorized under the laws of this State to represent his ward in our courts, and in substance, too, his lands situated here.

The question now is not whether any wrong has been done to the party, or whether he will, in fact, sustain any prejudice. It may be fairly assumed, from the character of the gentleman who was appointed to take charge of the rights of the infant in the action, that his duties have been properly performed. There is no complaint on that ground. The objection relates to the jurisdiction of the court over the party, and the consequent power to adjudge a legal and valid sale of his interests, so that the purchaser will acquire a perfect title. It is the right of the purchaser to have such a title, and if it is defective he will not be required to complete the purchase. This practice, under judicial sales in partition and foreclosure, has been long and well settled.

The incapacity of the defendant, in respect to whom the objection to the title arises, is twofold. It is conceded that he is an infant, and also an idiot or lunatic. It is so stated in the petition of the Ohio guardian. It is not made to appear, however, whether the guardian was appointed in Ohio, in respect to one incapacity of his ward, only, or both; nor as to which of them; nor does it appear whether he is a guardian of the person only, or of the estate of the ward also. The ward was about the age of twenty years when the application was made, and when the amendment was afterwards authorized by the order of the General Term, he was over twenty-one years of age.

The appointment of the guardian *ad litem* was not made pursuant to any provision of the Code, nor of the Revised Statutes. It was not indeed so claimed, either by the learned counsel who argued the appeal on the part of the respondents, nor by the learned justice who delivered the prevailing opinion of the General Term. (*Rogers* v. *McLean*, 11 Abb. Pr., 440.) It is unnecessary, therefore, to discuss the steps required by the Code for the appointment of a guardian *ad litem* for an infant. (§ 116.) Nor is it now claimed that the summons has been served upon this defendant, either personally or by publication. (§§ 134, 135.)

It is claimed that there has been a regular voluntary appearance on behalf of this defendant, or what is an equiv-

alent thereto, pursuant to section 139 of the Code; and also that the Supreme Court, being vested with the equity powers of the English Court of Chancery, is the guardian and protector of the estate and rights of idiots and lunatics, and can officially represent them ; and that it is not necessary that such a person should be made a party.

In my opinion, neither of these positions can be sustained. Had the incapacity of this defendant been that of infancy, merely, there was a failure in the proper proceedings to obtain a competent voluntary appearance. The infant in such case, being over fourteen, should have signed the application for the appointment of his guardian *ad litem*, or in case he had neglected to apply, the order directing the appointment should have been served on him, or some relative or person with whom he resided, in such manner and for such a length of time as the court, in the order, should direct. (Code, § 116.) There is superadded in this case the incapacity of idiocy or lunacy. An idiot or lunatic has no will or capacity to act for himself. He cannot personally apply, nor can he be put in default for not applying. It has been held in the Supreme Court, and I think on sufficient grounds, that the nearest relatives by blood cannot apply for the appointment of a guardian *ad litem* for a lunatic defendant without the service of summons. (*Heller* v. *Heller*, 6 How. Pr., 194, HAND, J.)

The authority of the foreign guardian, whether it related to the person or estate of his ward, and whether made in respect to his infancy or lunacy, is strictly local. It does not extend over the person or property of his ward in the State of New York. (Story on Con. Laws, § 499).

This rule is said to be founded on the same policy which has circumscribed the rights and authority of executors and administrators within the territorial limits of the laws of the State from whence they have received their appointment. (Same section.) A guardian appointed in another State has no right to receive the rents or to assume the possession of the real estate of his ward in this. (Story on Con. Laws, § 504.)

For the same reason he would be as little authorized to cause the voluntary appearance of his ward in an action here, the object of which was to procure a judgment for the sale of his real estate. There appears to be nothing upon which to base an amendment so as to make a regular voluntary appearance for this infant lunatic. Although he has become of age, he has not the capacity to ratify the proceedings. Had there been a committee appointed under the laws of this State, possibly, by permission of the court, a regular voluntary appearance might have been perfected. It is not necessary, however, to express an opinion on such a case, as it is not before the court.

In the cases referred to by the learned justice below, in which the voluntary appearance of an infant has been approved, there had been an authorized application pursuant to the Code. But the present case fails in that respect. There is no party, known to the laws of this State, authorized to make an application for this infant lunatic. (*Varian* v. *Stevens*, 2 Duer, 635.)

It was also urged, in opposition to the application, that the Supreme Court had the supervision of the estates of idiots and lunatics, and were authorized to represent such a party in any action concerning his property or estate, by virtue of the equity power devolved upon that court by the Constitution, and that it was not necessary that such a person should be brought in by the service of process.

This action was not brought in respect to the administration of the estate of the idiot or lunatic, nor can the court assume that such is his condition for the purpose of administering his estate, until he has been so found, under proceedings for that purpose, pursuant to the laws of this State.

The relief here sought may not be for his advantage; at least the court are not authorized to assume it to be so. If the rule were as extensive as has been claimed, I cannot perceive any facts to guide the court to the determination that the interests of the infant lunatic require a sale of the premises.

The object of the action is the partition of land; the judgment is for a sale of improved real estate, which must pay a

large rent, in which the lunatic has an interest. This is a change not usually favored by courts of equity in respect to the estates of lunatics: The Supreme Court are not, I think, called upon to volunteer a supervision under such circumstances, or where their supervision will necessarily produce a result of uncertain advantage to the lunatic.

The case of Ganse, a lunatic (9 Paige, 415), holds that a commission of lunacy may issue where the lunatic has lands within this State, although he is domiciled abroad.

The principle referred to by the learned counsel for the respondents cannot, I think, be invoked by third parties, except in the case of creditors or some one having a cause of action against the idiot or lunatic, and then, only after such has been found to be his condition under proceedings instituted to determine the question.

It seems entirely clear that this infant lunatic has not been properly brought into court, either as a lunatic or an infant, and that the court cannot lawfully exercise any jurisdiction to adjudge a sale of his real estate. The purchaser will not, therefore, acquire any title to the interest of the infant lunatic in the land, and cannot be directed to pay his money and take a conveyance.

The order of the General Term should be reversed, except as to the direction concerning costs, and the order of the Special Term should be affirmed, except as to the sum of $50 costs of the motion, which should be reduced to $10, and the appellant. should recover his costs on this appeal, as well as the appeal below.

Order of General Term affirmed.